The plaintiffs, Harold and Mavis Smith, appeal from a summary judgment granted for J.H. Berry Realty Company ("Berry Realty") in a fraud action.
The alleged fraud concerns a representation by an agent of Berry Realty that a house purchased by plaintiffs was located on a parcel of land in such a way as to be in compliance with zoning regulations. *Page 315 
This case has a rather long history. See Smith v. City ofGardendale, 508 So.2d 250 (Ala. 1987).
In February 1979, the Smiths were interested in a new home. They were shown the property at 944 Brookridge Drive in Gardendale, Alabama, by an agent of Berry Realty. On February 11, 1979, a sales contract was executed for the purchase of the home.
The fence in the back yard is located approximately one foot from the property line. Due to the angle at which the house is situated on the lot, the fence is approximately eighteen and one-half feet from the rear of the house at one end. The Smiths asked the agent if the position of the house and fence complied with applicable regulations. The agent answered that they did. Prior to closing, Mr. Smith investigated the matter by visiting the building inspector of the City of Gardendale, Mr. George Malone. Mr. Malone accompanied Mr. Smith to the city clerk's office, where Mr. Smith was informed by employees of that office that the home complied with the City of Gardendale building code. Mr. Smith specifically asked about the requirements of a rear lot line. Mr. Smith also obtained a copy of the restrictions promulgated by the Birmingham Regional Planning Commission. The plans for construction had been submitted to the City and approved.[1]
Mr. Smith testified in this regard as follows:
 "Q. At the time you first saw the house was there a fence constructed on the rear lot line of the house?
 "A. There was a fence back there, and at that time it was approximately one foot on this side of what was supposed to be the rear yard line.
 "Q. Okay. Were you aware of the location of the fence when you first saw the house?
"A. Oh, yeah. . . .
". . .
 "Q. Now, at any time prior to the time the sale was closed on April 3rd, 1979, did you have occasion to speak to a Mr. George Malone, who is the Building Inspector of the City of Gardendale?
"A. I think that I only talked to him one time.
 "Q. And when would that have been? "A. It could have been any date from three to seven days before closing, if we closed on the third day of April.
 "Q. All right. That's close enough. What was discussed between you and Mr. Malone on the one occasion you met with him?
 "A. Now, here, again, is a case of where I can remember almost verbatim what was said. . . . I walked over and introduced myself and told him who I was and I told him — now this is almost verbatim — that I would like to see the Gardendale Building Code, and I kept calling it the Gardendale Building Code, because I wanted to be able to read and satisfy in my own mind that there was no violations the way the code read as to where that house was situated on the lot.
". . .
 "Q. All right. I take it that when you first looked at the house you liked the house or you wouldn't have bought it?
"A. Still like the house.
 "Q. And I take it also that when you looked at the house the location of the house on the lot was not particularly troublesome to you when you first saw it?
 "A. I asked a lot of questions about it. I would have liked to have had more back yard, and Mr. Brooks knows this.
 "Q. But you were familiar with the way the house sat on the lot?
"A. Oh, yes.
 "Q. It was very easy for you to see what your back yard was like?
 "A. Oh, yes. There's no question. You could see it.
". . . *Page 316 
 "Q. If the violation were removed, then I take it that you would be perfectly satisfied with it?
 "A. If I had twenty-five feet back there, I'd be the happiest man in Brentwood.
 "Q. Well, now, you didn't have twenty-five feet when you first saw the house?
"A. I tried to buy twenty-five feet."
The Smiths purchased the property on April 3, 1979. In the summer of 1979, the Smiths and J.H. Berry, owner of Berry Realty, received a letter from the City informing them that the rear lot set-back line was in violation of the building code of the City of Gardendale. This was the first notice to either of the parties that there was a violation of the zoning law. The Smiths have also received notification from the building inspector that a variance from strict compliance with the zoning regulations is available to correct the violation. The Smiths declined the City's request that they apply for a variance.
The Smiths brought this action, alleging that they were fraudulently induced to purchase the home by misrepresentations by Berry Realty concerning the property's compliance with the building code and alleging that they have suffered damages.
The elements of the tort of fraudulent misrepresentation are (1) a false representation (2) regarding a material existing fact, (3) which the plaintiff relies upon, and (4) damages proximately caused by the misrepresentation. Roney v.Ray, 436 So.2d 875 (Ala. 1983); Earnest v.Pritchett-Moore, Inc., 401 So.2d 752 (Ala. 1981).
Assurances made by the agents of Berry Realty concerning whether the house complied with zoning requirements, although honestly believed to be true, were in fact false. The house was eventually determined to be in violation of the building code of the City of Gardendale. Presumably, the house was never in compliance, despite assurances from the building inspector to the contrary.
After reviewing the evidence, we conclude that there was not sufficient reliance on the misrepresentation of Berry Realty to support an action for fraud. From the outset, Mr. Smith expressed his concern with regard to the positioning of the house relative to the rear lot set-back requirements. In fact, he undertook a rather extensive investigation of his own into the zoning requirements and the compliance or non-compliance of the property. Mr. Smith evidenced his intention not to rely on the assurances given by the agent of Berry Realty.[2]
To claim reliance upon a misrepresentation, the allegedly deceived party must have believed it to be true. If it appears that he was in fact so skeptical as to its truth that he placed no confidence in it, it cannot be viewed as a substantial cause of his conduct. Halbrooks v. Jackson, 495 So.2d 591
(Ala. 1986); Ex Parte Leo, 480 So.2d 572 (Ala. 1985). The reliance must be reasonable under all the circumstances of the case. Halbrooks, supra. Compare Bedwell Lumber Co. v.T T Corp., 386 So.2d 413 (Ala. 1980). The undisputed fact that Mr. Smith was unwilling to accept the statement of the defendant's agent without verification is evidence that he did not rely on it. Based on his own testimony, it is clear that Mr. Smith was unwilling to accept the statement of the defendant's agent regarding the applicable zoning regulations.
Accordingly, we find no error in the trial court's grant of summary judgment in favor of Berry Realty.
For the foregoing reasons, the decision of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.
[1] According to his affidavit, Mr. Malone gave his approval at each inspection based on his belief that the house as constructed was in compliance with the zoning ordinances and requirements for the City of Gardendale.
[2] Mrs. Smith makes no claim separate and apart from that of her husband. *Page 317