**Daniel A. THOMAS, Plaintiff,**

v.

**John HENDERSON, et al., Defendants.**

**No. CIV.A.01–0479–WS–L.**

United States District Court,
S.D. Alabama,
Southern Division.

Nov. 3, 2003.

Tracy P. Turner, E. Russell March, III, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, for Plaintiff.

William E. Shreve, Jr., M. Warren Butler, Lyons, Pipes & Cook, Mobile, AL, for Intervenor Plaintiff.

J. Don Foster, Johnston Druhan, LLP, Frederick G. Helmsing, John C. Pipes, Helmsing, Leach, Herlong, Newman & Rouse, P.C., Mobile, AL, James G. Curenton, Jr., Fairhope, AL, for Defendants.

## ORDER

STEELE, District Judge.

This matter is before the Court on defendant John Henderson's Motion for Partial Judgment on the Pleadings (doc. 85) and Old Republic Insurance Company's Motion to Intervene (doc. 84). Both motions having been fully briefed by the parties, they are ripe for disposition at this time.

## I. Background.[1]

This action arises from plaintiff Daniel A. Thomas's purchase of a Cessna 172E aircraft (the "Aircraft") from defendant

---

1. This recitation of background facts is not intended to be, nor should it be construed as, a formal or binding set of findings of fact. This matter is before the Court not on a Rule 56 motion, but on a Rule 12(c) motion for judgment on the pleadings, and the parties' accounts of these events are construed as nothing more than bare allegations at this time. This Order summarizes relevant aspects of the pleadings; however, given the procedural posture of this action, the Court expressly refrains from making any specific findings of fact.

John Henderson in Foley, Alabama in October 2000. According to the Second Amended Complaint, Thomas learned about the Aircraft through an Internet advertisement, in which the subject plane was touted as a "great plane to train for your IFR ticket." (Second Amended Complaint, ¶ 9.) Thomas subsequently inquired about the Aircraft, and was informed by Henderson that it was in excellent shape, with recent annual and pilot static inspections. (*Id.*, ¶ 10.) Thomas proceeded to arrange for defendant Sky King Aviation, Inc., and its Director of Maintenance, defendant Dean Linner, to conduct a pre-purchase and annual inspection of the Aircraft. (*Id.*, ¶¶ 12–13.) Following Linner's inspection, on October 27, 2000, Thomas and Henderson entered into a Purchase Agreement, whereby Thomas agreed to purchase the Aircraft from Henderson for $29,900. (*Id.*, ¶ 15.) In that Agreement, defendant Henderson represented to Thomas that the Aircraft "is in airworthy condition as prescribed by FAA standards" and that it "had all airworthy directives (ADs) completed." (*Id.*) Sometime after purchasing the Aircraft, Thomas learned of various mechanical and structural problems with the Aircraft, including corrosion in the wings, an oil leak, a fuel leak, and a dead battery. (*Id.*, ¶¶ 19, 22, 30.)

Thomas alleges that he took possession of the Aircraft on November 2, 2000, "[i]n reliance upon the verbal and written representations" of Henderson and other defendants, "including the fictitious or erroneous entries in the aircraft's flight and maintenance log books." (*Id.*, ¶ 29.) Thomas proceeded to fly the Aircraft to New York, and en route encountered numerous problems demonstrating that the condition of the Aircraft was not as defendants had represented it to be. (*Id.*) After reaching New York, Thomas ordered further inspection of the Aircraft, which revealed that "repairs represented by Linner and Henderson in the log books had not been made; that, contrary to representations by Linner, Henderson and Simpson, the aircraft did not meet FAA airworthiness standards and was unsafe to fly; and that the condition of the aircraft was not as represented." (*Id.*, ¶ 32.) Thomas further alleges that "[d]efendants combined and conspired with each other to conceal the unairworthy and unsafe condition of the aircraft and to cause Thomas to purchase and take title to such aircraft in an unairworthy and unsafe condition." (*Id.*, ¶ 80.)

## II. Motion for Partial Judgment on the Pleadings.

The Second Amended Complaint propounds a staggering sixteen (16) causes of action emanating from this relatively straightforward fact pattern. In his Motion for Partial Judgment on the Pleadings, defendant Henderson seeks entry of judgment in his favor on ten of those causes of action.[2]

### A. Legal Standard.

The timing of Henderson's Motion is unusual, albeit not improper. Typically, motions for judgment on the pleadings are filed shortly after the pleadings close, near the inception of a lawsuit, not some two years after a defendant was served with process, on the eve of the discovery completion date. Although he was served with process back on July 26, 2001 and discovery has proceeded in this matter for some time (and indeed closed on November 1,

---

2. Henderson's Motion apparently encompasses all of Thomas's claims against him except for the First Cause of Action, which alleges a claim for breach of contract predicated on Henderson's alleged breach of the Purchase Agreement.

2003), Henderson opted to file a Motion for Judgment on the Pleadings under Rule 12(c), Fed.R.Civ.P., in September 2003, rather than using the fruits of discovery to cast his arguments in the form of a motion for summary judgment.[3]

Whatever its rationale, this strategic decision profoundly curtails the scope of review and the materials that the Court may consider in reviewing the Motion. As the Eleventh Circuit has explained, "[j]udgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir.2002) (citation omitted). In that context, the Court "must accept the facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir.2001); *King v. American Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir.2002) (likening Rule 12(c) standard to that used in reviewing Rule 12(b) motions, and imposing on trial court the responsibility to accept all allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmovant). Dismissal pursuant to Rule 12(c) is proper only where after reviewing the pleadings "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations" therein. *Horsley*, 292 F.3d at 700. Therefore, the Court's review of Henderson's Motion is confined to the four corners of the pleadings, as well as any judicially noticed facts. If Thomas has adequately alleged these causes of action in his Second Amended Complaint, then Henderson's Motion must be denied, irrespective of what the evidence might show.

### B. Fraud and Deceit Claims (Causes of Action III, IV, VII, VIII).

As the Court understands them, the fraud and deceit claims against Henderson allege that he fraudulently misrepresented certain facts to Thomas, including that the Aircraft was airworthy, that it was safe and in good repair, that all airworthiness directives had been completed, and that the Aircraft was suitable for use in training to obtain an IFR ticket. (Second Amended Complaint, ¶ 45.) A fair reading of the Second Amended Complaint shows that such claims are also rooted on alleged misrepresentations by Henderson in the Aircraft's log books, including entries relating to repairs that had never been performed. (*Id.*, ¶¶ 29, 32.)

Henderson advances two arguments in support of his position that these various fraud and deceit claims should be dismissed. In particular, he maintains that the challenged statements on which the fraud and deceit claims hinge are mere expressions of opinion, not representations of material fact, and are therefore not actionable. (Henderson Brief, at 5.) Additionally, Henderson contends that Thomas could not have relied on such statements to his detriment because he caused to be conducted an independent investigation of the veracity of those statements before completing the purchase of the Aircraft. (*Id.*, at 7.)[4] Each of these contentions shall be addressed in turn.

---

**3.** Equally puzzling is why Henderson chose not to seek Rule 12(c) relief at a much earlier date. If, as he now contends, the pleadings fail to state an actionable claim against him, then his active participation in this lawsuit for more than two years (no doubt at considerable inconvenience and expense) before invoking a Rule 12(c) procedural mechanism that has always been available to him is difficult to fathom.

**4.** Neither party's submissions enumerate all elements of a fraud claim under Alabama law.

### 1. Fact/Opinion Distinction.

█ The Court finds that the fact/opinion dichotomy does not warrant dismissal of plaintiff's fraud and deceit claims against Henderson at this stage. Four distinct considerations animate this result. First, Alabama courts have frequently recognized that the question of whether a particular statement is properly classified as opinion or fact should typically be resolved by a jury unless no reasonable jury could find it to be a statement of fact. *See Fincher v. Robinson Bros. Lincoln–Mercury*, 583 So.2d 256, 259 (Ala.1991) ("in cases of doubt" the question of whether a given representation is an expression of opinion or a statement of fact should be left for the jury); *Thompson v. United Companies Lending Corp.*, 699 So.2d 169, 173 (Ala.Civ.App.1997) ("whether a statement is an expression of an opinion or a statement of fact depends upon all the circumstances of the particular case, and the question should be left to the jury"); *see generally Cooper & Co. v. Lester*, 832 So.2d 628, 633 (Ala.2000) ("Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties.") Based solely on review of the pleadings—as the Court is constrained to do in the context of Henderson's Motion—the Court cannot conclude that there is no doubt as to the proper classification of these statements because of the paucity of information regarding the surrounding circumstances on which the fact/opinion determination must necessarily be founded.

Second, on their face, at least several of the alleged representations referenced by Thomas strongly appear to be fact-based, rather than opinion-based. For example, Henderson's alleged misrepresentations in log books that certain repairs were done, when in fact they were not done, are most logically classified as statements of fact. Likewise, Henderson properly concedes that the allegation that Henderson told Thomas that "all airworthy directives had been completed" appears to be a statement of fact. (Henderson Brief, at 7.)

Third, courts in other jurisdictions have found that the types of statements referenced here may support viable fraud claims. *See Godwin Aircraft, Inc. v. Houston*, 851 S.W.2d 816, 821–22 (Tenn. App.1992) (affirming trial court finding that defendant made fraudulent misrepresentations in the sale of an aircraft where defendant falsely represented that aircraft was airworthy, which representation was relied on by plaintiff in entering the transaction); *Aeropesca Ltd. v. Butler Aviation Int'l, Inc.*, 44 Md.App. 610, 411 A.2d 1055, 1062–64 (1980) (finding clear and convincing evidence of fraud where defendant represented to plaintiff that aircraft was airworthy even though he knew or should have known it was not); *United States v. Vicars*, 465 F.2d 720, 722–23 (6th Cir.1972) (representations of airworthiness are properly considered "badges of fraud"); *see generally Limited Flying Club, Inc. v. Wood*, 632 F.2d 51, 56 (8th Cir.1980) (representation that plane is airworthy creates express warranty of airworthiness); *Pease v. Beech Aircraft Corp.*, 38 Cal.App.3d 450, 113 Cal.Rptr. 416 (Cal.App. 4 Dist.1974)

Nonetheless, Henderson is correct that a fraud claim requires proof of false representations and a plaintiff's reasonable reliance upon same. *See Baker v. Bennett*, 603 So.2d 928, 935 (Ala.1992); *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1264 (Ala.2001) ("A claim of fraud, including such fraud as fraud in the factum, requires the party making the claim to prove by substantial evidence that he or she reasonably relied on the alleged misrepresentation.").

(involving fraud claim alleging that representation of airworthiness was false because of design defect); *Mercer v. Elliott,* 208 Cal.App.2d 275, 279–80, 25 Cal.Rptr. 217 (Cal.App. 2 Dist.1962) (finding that fraud claim stated a cause of action where defendant allegedly represented that aircraft had been approved for commercial operations by F.A.A., that he had records to substantiate modifications to aircraft and that all the aircraft needed in order to obtain a certificate of airworthiness was an 8,000 hour airframe inspection). Absent Alabama authority to the contrary, the Court concurs with the conclusions of these other courts regarding the sufficiency of a knowing, intentional misrepresentation of airworthiness to establish a cause of action for fraud.

Fourth, under Alabama law, classification of a statement as opinion rather than fact is not necessarily fatal to a fraud claim. The Alabama Supreme Court has held that "if there is proof of actual fraudulent intent at the time the representation is made and the person succeeds in the deception and injury results, an action for fraud may be predicated on such a representation, notwithstanding the opinion nature of the representation." *Cooper & Co.,* 832 So.2d at 633 (quoting *Reynolds v. Mitchell,* 529 So.2d 227, 231 (Ala.1988)).[5] Based on its review of the pleadings, the Court cannot rule out Thomas's ability to establish actual fraudulent intent by Henderson at the time of the alleged statements, which were allegedly successful in

deceiving Thomas and resulted in his injury. As such, at the Rule 12(c) stage, even if all of the alleged misrepresentations by Henderson were expressions of opinion, Henderson would still not be entitled to dismissal of those claims, under the standards enunciated by the Alabama Supreme Court in *Cooper & Co.*

### 2. Reliance.

■ Alternatively, Henderson maintains that dismissal of the fraud and deceit claims is warranted because the Second Amended Complaint alleges that Thomas hired independent parties, defendants Sky King and Linner, to perform a separate inspection of the Aircraft. (Second Amended Complaint, ¶¶ 12–14, 17–23.) According to Henderson, these allegations negate the required element of reliance because "[i]f the Plaintiff had been relying on Henderson's statements, he would not have hired Sky King and Linner to determine whether the aircraft was airworthy and whether all airworthy directives had been complied with." (Henderson Brief, at 7–8.)

■ The Court cannot adopt Henderson's logic for several reasons. Under Alabama law, a defendant is not liable for a misrepresentation if the plaintiff's decision to enter into a transaction "is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him." *Burroughs v. Jackson Nat. Life Ins. Co.,* 618

---

5. Indeed, Henderson's representations that the Aircraft was airworthy, even if mere opinions, may be likened to those deemed sufficient to sustain a fraud cause of action on that theory in other contexts. For example, in *Thompson,* the appeals court found that the trial court erred in refusing to submit a fraud claim to a jury based on a defendant's statement to plaintiffs that they were "fully covered" and that they "did not have to worry about insurance." 699 So.2d at 173. Simi-

larly, in *Cooper & Co.,* the plaintiff in purchasing real estate relied on defendant's statement that an easement "should handle" the drainage of rainwater. The Alabama Supreme Court found that statement of opinion to be sufficient to submit the fraud claim to the jury, where there was substantial evidence that the defendant gave his opinion with the intent to deceive and that the plaintiffs' reliance was reasonable. 832 So.2d at 634–35.

So.2d 1329, 1332 (Ala.1993) (quoting *Restatement (Second) of Torts,* § 547(2)); *see generally Stoner v. Anderson,* 701 So.2d 1140, 1144 (Ala.Civ.App.1997) (party's "[r]eliance is unjustifiable as a matter of law only if the representation was so patently and obviously false that the plaintiffs must have closed their eyes to avoid the discovery of the truth"). A plain reading of the *Restatement* formulation is that the reliance requirement would not be satisfied here if Thomas decided to purchase the Aircraft not because of Henderson's representations, but rather because of those of Sky King and Linner. However, that is not the scenario described in the Second Amended Complaint. As the Court reads the pleadings, which are controlling at this stage, Thomas alleges that he decided to purchase the Aircraft based on *both* his belief in the truth of Henderson's representations *and* his independent investigation via Sky King and Linner. (Second Amended Complaint, ¶¶ 45, 47, 49, 54, 60, 62, 64.)[6] For purposes of a Motion for Judgment on the Pleadings, that allegation is sufficient to defeat the argument that Thomas did not rely on Henderson's representations in deciding to purchase the Aircraft. He claims that he did. At the Rule 12(c) stage, nothing more is required.

Additionally, the Court finds troubling the ramifications of Henderson's position, as he apparently advocates a bright-line rule that no Alabama cause of action for fraud lies in any case in which a recipient of a fraudulent statement undertakes an independent investigation of any stripe. The practical import of such a rule would be to punish those parties to a transaction who were conscientious in investigating the veracity of another party's representations (even if their investigation was unsuccessful in identifying deception), while rewarding those who failed to undertake such investigation. Such a rule would encourage parties to a commercial transaction to wear blinders, and would yield inequitable outcomes. The Court is not aware of any Alabama authority for such an extreme proposition, and the weight of authorities in other jurisdictions is to the contrary. Indeed, one prominent general legal reference source explains:

> "[I]t is generally held that one in fact relying wholly on representations is not barred from relief merely because he made independent inquiry. Redress will not be denied nor lack of reliance conclusively presumed where the investigation failed to reveal the truth, nor will an unsuccessful investigation necessarily deprive the defrauded party of his right to rely on the speaker's representations."

37 *Corpus Juris Secundum Fraud,* § 47 (footnotes omitted); *see also Apperson v. U.S. Fidelity & Guaranty Co.,* 318 F.2d 438, 441 (5th Cir.1963) ("The mere fact that the insurer makes an independent investigation in order to test the truth of the representations made by the applicant does not absolve the applicant from telling the truth nor lessen the right of the insur-

---

6. Henderson apparently claims that Thomas's decision to engage in his own investigation necessarily implies lack of reliance on Henderson's representations. This contention is based on leaps of logic and assumptions that may well be borne out as a factual matter, but that are not sustainable within the confines of the pleadings governing his Motion. If Henderson is correct, then the evidence will establish that Thomas discounted Henderson's representations and relied exclusively on those of Sky King and Linner in deciding to purchase the Aircraft. However, the Second Amended Complaint clearly alleges that Thomas's decision was based on purportedly false representations of Henderson. That Henderson disputes the veracity of that allegation does not entitle him to Rule 12(c) relief.

er to rely upon his representations, unless the investigation either discloses the falsity of the representations or discloses facts which would put a prudent person on further inquiry."). The Court is aware of no Alabama law at odds with this general proposition.[7]

Finally, Alabama courts have declared that reliance on an independent investigation "does not relieve the maker [of a fraudulent representation] from liability if he by false statements or otherwise intentionally prevents the investigation from being effective." *Burroughs*, 618 So.2d at 1332 (quoting *Restatement (Second) of Torts*, § 547(2)). Indeed, the *Restatement* acknowledges that where a plaintiff conducts an independent investigation, "the maker of the fraudulent misrepresentation may still be liable if he intentionally frustrates the investigation. When he makes it ineffective by false statements, by misdirection, concealment or other trickery, his original misrepresentation carries through, and he cannot be heard to say that the recipient has relied upon an inquiry that has come to nothing through his own machinations." *Restatement*, § 547 (comment (b)). In this case, Thomas alleges just such machinations by Henderson, who is alleged to have conspired with the other defendants to "conceal the unairworthy

and unsafe condition of the aircraft and to cause Thomas to purchase and take title to such aircraft in an unairworthy and unsafe condition." (Second Amended Complaint, ¶ 80.) Although Henderson bristles that the Second Amended Complaint lacks "one single allegation of anything Henderson did to combine or conspire with Linner to conceal anything," (Reply Brief, at 2), the Court finds that the pleadings adequately allege such wrongful conduct. Henderson may desire a more detailed allegation of the workings of the alleged conspiracy; however, he is not entitled to one at the pleadings stage.[8] The allegation that Henderson conspired with others to conceal the Aircraft's unairworthy condition from Thomas is sufficient to allege that Henderson interfered with or frustrated the effectiveness of Thomas's independent investigation, and to preclude dismissal of the fraud and deceit claims on that basis.

### C. *Promissory Fraud Claim* (Cause of Action V).

To establish a cause of action for promissory fraud under Alabama law, a plaintiff must establish: "(1) that the defendant made a false representation of a material fact; (2) that the false representation was relied upon by the plaintiff; (3)

---

7. Henderson's citation to *Smith v. J.H. Berry Realty Co.*, 528 So.2d 314 (Ala.1988), is not to the contrary. In *Smith*, the Alabama Supreme Court made an express finding based on deposition testimony that "it is clear that Mr. Smith was unwilling to accept the statement of the defendant's agent regarding the applicable zoning regulations." 528 So.2d at 316. As the Court reads *Smith*, the critical fact was not that Smith undertook an independent investigation, but that the evidence taken as a whole showed that he did not believe the agent's statement to be true or otherwise rely on it in making his decision to purchase the house. *Id.; see also Liberty Nat. Life Ins. Co. v. Allen*, 699 So.2d 138, 141–42 (Ala.1997) (applying *Smith* and finding no actionable fraud claim where evidence estab-

lished that plaintiff never believed allegedly fraudulent statement). No such finding is possible here, given the procedural posture of this case and Thomas's plain contentions in the Second Amended Complaint that he accepted and relied on Henderson's representations in buying the Aircraft.

8. Once again, Henderson's arguments are weakened considerably by the fact that this Court in reviewing his motion is constrained by the pleadings. Discovery may reveal no evidence of any such conspiracy; however, at this juncture the Court must accept the allegations of the Second Amended Complaint as true.

that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent to deceive; and (5) that when the representation was made the defendant intended not to perform in accordance with it." *Howard v. Wolff Broadcasting Corp.*, 611 So.2d 307, 311 (Ala.1992). Henderson maintains that the second element is not satisfied here because "the Plaintiff did not rely upon any representation or statement which the Plaintiff has alleged that Henderson made," and that the Fifth Cause of Action should therefore be dismissed. (Henderson Brief, at 9.) This argument is identical to that posited by Henderson in support of his claim for dismissal of the fraud and deceit claims, and fails for the same reasons set forth in Section II.B.2., *supra.*

**D.  Suppression Claim** *(Cause of Action VI).*

■ Thomas also brings a cause of action against Henderson for fraudulent suppression, alleging that Henderson (and other defendants) suppressed the facts that the Aircraft was unairworthy and unsafe, that requested repairs had not been performed, and that log books and maintenance records were erroneous or falsified. (Second Amended Complaint, ¶ 56.) A fraudulent suppression claim encompasses the following elements: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting." *Ex parte Household Retail Services, Inc.*, 744 So.2d 871, 879 (Ala.1999). The "inducement" element has been held to equate to the "reliance" requirement found

in other types of fraud actions under Alabama law. *Id.* (opining that reliance is an essential element of a suppression claim). Once again, Henderson maintains that Thomas could not have relied upon any suppression of facts by Henderson because he conducted an independent investigation through Sky King and Linner. This argument cannot succeed here for the same reasons that it could not prevail with respect to the fraud, deceit and promissory fraud claims.

**E.  Civil Conspiracy Claim** *(Cause of Action XIII).*

■ As for the civil conspiracy claim, Henderson correctly asserts that Alabama law precludes a defendant from being held liable for conspiracy if the underlying wrongs do not provide a cause of action. *See Jones v. BP Oil Co.*, 632 So.2d 435, 439 (Ala.1993) ("liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy"). However, the Court has already found that the underlying wrong alleged by Thomas, to-wit, fraudulent concealment of the unairworthy and unsafe condition of the Aircraft, is in fact actionable against defendant Henderson. For that reason, the conspiracy claim arising from that underlying wrong is also cognizable.

**F.  Breach  of  Warranty  Claims** *(Causes of Action XIV, XV).*

Thomas's Fourteenth and Fifteenth Causes of Action sound in breach of express warranty, the former alleging that Henderson breached an express warranty of airworthiness and the latter asserting that Henderson breached an express warranty of fitness for a particular purpose. (Second Amended Complaint, ¶¶ 84–92.)

■ With respect to the claim of breach of warranty of airworthiness, Henderson reiterates his well-worn refrain that his representation that the Aircraft was airworthy was a mere statement of opinion and therefore cannot give rise to a breach of express warranty claim. (Henderson Brief, at 11–12.) The Court having already considered and rejected an identical contention in the context of the fraud, deceit, promissory fraud and suppression causes of action, little purpose would be served by revisiting it in the breach of warranty context. In short, Henderson is not entitled to judgment on the pleadings with respect to the Fourteenth Cause of Action.

■ The Fifteenth Cause of Action alleges that Henderson expressly warranted the fitness of the Aircraft for a particular purpose by advising Thomas "that the aircraft was fit for the particular purpose of training for an IFR ticket." (Second Amended Complaint, ¶ 89.) The Second Amended Complaint alleges that Henderson breached this warranty because the Aircraft was, in fact, unsuitable for training for an IFR ticket by virtue of its unairworthy condition at the time of sale. (*Id.*, ¶ 91.) Henderson was allegedly aware that Thomas's purpose in buying the Aircraft was to train for his IFR ticket. (*Id.*, ¶ 90.) Additionally, Thomas allegedly relied on Henderson's representations regarding the suitability of the Aircraft for training to obtain an

IFR ticket in purchasing the Aircraft. (*Id.*, ¶¶ 45, 47.)

Henderson asserts that this claim is not actionable because it requires evidence that the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Ala.Code § 7–2–315. On its face, however, the Second Amended Complaint alleges both that (a) Henderson knew the particular purpose for which Thomas was seeking to purchase the Aircraft, and (b) Thomas relied on Henderson's representations regarding the suitability of the Aircraft for that particular purpose.[9] The Court finds that such allegations comport with Alabama statutory requirements for stating a claim for breach of warranty of fitness for a particular purpose.

### G. *Intentional Infliction of Emotional Distress Claim (Cause of Action XI).*

Thomas also propounds a claim for intentional infliction of emotional distress (known in Alabama as the tort of outrage). Although that claim is not as clearly articulated in the pleadings as one might hope, Thomas's contention is apparently that defendants subjected him to extreme danger by inducing him to take possession of and fly the Aircraft in an unsafe condition. (Second Amended Complaint, ¶ 74.) Henderson maintains that these allegations are insufficient as a matter of Ala-

---

9. Henderson argues that these allegations are insufficient because Thomas has not specifically alleged that Henderson *knew* or had reason to know Thomas was relying on Henderson's skill and judgment in making the purchase. (Henderson Reply Brief, at 4.) However, Thomas has alleged that Henderson made such representations with the intent to deceive Thomas into altering his position and purchasing the Aircraft. (Second Amended Complaint, ¶¶ 60, 64, 74, 80.) Such an alle-

gation logically implies that Henderson knew or had reason to know Thomas would rely on his representations in that regard. Accordingly, construing the Second Amended Complaint in the light most favorable to Thomas and drawing all reasonable inferences in his favor, as it must at this stage of the proceedings, the Court finds that he has adequately pleaded a cause of action under Ala.Code § 7–2–315 for breach of warranty of fitness for a particular purpose.

bama law to state a cause of action for outrage.

Alabama courts have outlined the contours of the tort of outrage in the following terms:

"[W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.... By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Baker v. State Farm General Ins. Co.*, 585 So.2d 804, 807 (Ala.1991) (citation omitted).

While Alabama courts do recognize this tort, they have consistently deemed it a "very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993) (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented"). So circumscribed, in fact, is the reach of the tort of outrage that to date the Alabama Supreme Court has allowed such claims only in three limited circumstances: "cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric *means to* coerce a settlement; and cases involving

egregious sexual harassment." *Carter v. Harris,* 64 F.Supp.2d 1182, 1194 (M.D.Ala. 1999) (citing *Thomas,* 624 So.2d at 1044).

■ At most, Thomas's Eleventh Cause of Action alleges that Henderson knowingly, intentionally placed him in a position of danger by deceiving him about the safety of the Aircraft, with knowledge that Thomas would fly it long distances, imperiling life and limb. The mere act of exposing a person to some risk is not sufficient to meet the imposing threshold for liability in outrage cases. A useful analogy may be drawn to *Grantham v. Vanderzyl,* 802 So.2d 1077 (Ala.2001), in which a doctor was alleged to have thrown a patient's blood and "surgical refuse" in the face of an operating room nurse with whom he was having a disagreement,[10] as a result of which the nurse underwent a battery of a half dozen blood tests over a period of one year to check for exposure to HIV, hepatitis or other communicable diseases. Those tests came back negative, but for that one-year period the plaintiff could not be certain that she had not been infected with a potentially deadly disease as a result of the doctor's actions. The Alabama Supreme Court found that summary judgment was properly awarded to the doctor on her outrage claim, reasoning that "[t]he mere fear of contracting a disease, without actual exposure to it, cannot be sufficient to cause the level of emotional distress necessary for this cause of action" and that plaintiff "was never in danger." *Id.* at 1081. By emphasizing these considerations, the *Grantham* court suggested the result might have been different had the plaintiff actually been exposed to a substantial risk of contracting a deadly or loathsome disease.

10. Upon seeing what he had done, the doctor testified that his response was, "I don't give a damn."

Given the marked hostility of Alabama courts to the tort of outrage and the narrowly cabined circumstances under which it is recognized, the Court concurs with Henderson that Thomas is unlikely to be able to create a jury question on his outrage claim. However, dismissal on the pleadings is unwarranted. The reasoning of *Grantham* shows that Alabama courts applying the tort of outrage look to the extent of exposure to danger and the nature and extent of the threat. Without evidence as to how unsafe the Aircraft was at the time Thomas took possession, the Court cannot realistically evaluate his claim that its condition presented an "extreme hazard to [his] safety," such as might authorize Thomas to proceed on an outrage theory.[11] On the basis of the pleadings alone, the Court cannot conclude with certainty that Thomas would be able to prove no facts that might support a cognizable outrage claim.

## III.  Motion to Intervene.

### A.  *Relief Sought by Old Republic.*

Having exhaustively parsed through defendant Henderson's Motion for Judgment on the Pleadings, the Court will now take up the issues raised by non-party Old Republic Insurance Company's Motion to Intervene (doc. 84). Old Republic alleges that it issued a policy of Airport Liability Insurance (the "Policy") which may or may not afford insurance coverage to defendants Sky King and Linner with respect to Thomas's claims against them in this action. (Motion to Intervene, ¶ 2.) Old Republic is furnishing a defense to Sky King and Linner in this action subject to a reservation of rights; however, Old Republic maintains that it owes no coverage to them under the subject Policy. (*Id.,* ¶ 3.)[12]

Notwithstanding its belief that no coverage exists, Old Republic asserts that because of the specific terms, conditions and exclusions of the Policy, certain of Thomas's claims against its insureds may be covered while certain others may not. Likewise, according to Old Republic, certain categories of damages sought by Thomas from its insureds may be subject to coverage under the Policy, while certain others may not. (*Id.,* ¶ 4.)[13] Based on these factors, Old Republic expresses concern that a general damages award in this action would effectively preclude it and its insureds from sorting out which components of that award against Sky King and/or Linner were covered by the Policy and which were not. (*Id.,* ¶ 6.) To avoid

---

11.  If the Aircraft were fundamentally sound, but merely operating inefficiently or at a shade less than full power, at the time of Thomas's cross-country jaunt, clearly no outrage claim would lie. If, however, the Aircraft were held together by chewing gum and duct tape, such that Thomas believed the Aircraft was likely literally to fall from the sky at any moment as he flew from Alabama to New York, and if Henderson acted recklessly or intentionally to cause distress to Thomas in the face of that risk, that set of facts might present a different situation entirely for outrage purposes.

12.  The coverage dispute between Old Republic and its insureds is the subject of a separate declaratory judgment action filed by Old Republic less than a week before it submitted its Motion to Intervene in this action. The declaratory judgment action is pending before the undersigned District Judge, and bears the caption *Old Republic Insurance Company v. Sky King Aviation, Inc., et al.* (Civil Action No. 03–0579–WS–L).

13.  For example, Old Republic alleges that the Policy extends coverage to damages for mental anguish, but not for strictly economic losses. Thomas seeks both. According to Old Republic, the Policy likewise provides coverage for accidents, but not for injuries or damages that its insureds expected or intended. Arguably, Thomas's causes of action encompass both categories of claims.

such a result (in which neither Old Republic nor its insureds would be able to assess whether the jury had awarded categories of damages based on claims for which the Policy affords coverage), Old Republic seeks permission to intervene in this action "for the limited purpose of submitting special jury interrogatories and/or a special verdict form for the Court's consideration and requesting submission of same to the jury." (*Id.*, ¶ 5.) Old Republic asserts that its requested interrogatories or verdict form would ask the jury, in the event of a verdict in Thomas's favor, "to specify the claim or claims forming the basis for the verdict" and "would also ask the jury to itemize any damage award in terms of compensatory damages for economic losses, mental anguish, and any other injury alleged, and punitive damages." (*Id.*)[14]

To delineate the scope of the intervention sought, Old Republic stresses that it will not participate in the trial, that the jury will not be informed of the intervention or the existence of the Policy, that the intervention will require no additional discovery, and that it will not delay the trial of this action. (*Id.*, ¶ 7.)

### B. Objections of Parties.

All parties to this action have been given an opportunity to respond to Old Republic's Motion. Tellingly, neither Sky King nor Linner (the two parties most directly affected) have objected. For his part, defendant Henderson filed a cryptic one-page submission stating without amplification that "Old Republic seeks to deprive Henderson of a jury trial on the issues presented by Old Republic" and that Old Republic is "attempting to obtain the benefits of its unproven allegations while remaining unknown to the jury." (Henderson Opposition, at 1.) Because they are couched in such cursory, conclusory verbiage, the Court cannot discern the basis of these objections. Nothing in Old Republic's request would appear to have any bearing on Henderson's right to a jury trial, much less to deprive him of that right, nor are there any apparent "unproven allegations" relating to Henderson that Old Republic's Motion might implicate. To the contrary, Old Republic is simply asking that it be permitted to submit proposed interrogatories or a special verdict form for the Court's consideration. If approved by the Court, those filings would instruct the jury to itemize the categories and amounts of any damages it awards, and to specify the particular causes of action for which damages are awarded. Nothing about this request would appear to prejudice Henderson's interests in this action.

Thomas also objected to Old Republic's Motion, arguing as follows: (1) Old Republic's intervention would be prejudicial to the interests of Sky King and Linner; (2) the intervention would confuse the jury "due to the instructions which would be required to distinguish between the objective tests applicable for the imposition of punitive damages and the subjective tests required to determine the applicability of one or more of the exclusions relied upon

---

14. Obviously, if Old Republic were able to prove in the declaratory judgment action that no coverage under the Policy is available for Thomas's claims against Sky King and Linner, then this type of specificity would be unnecessary. If, however, the declaratory judgment action yields a determination that certain elements of Thomas's damages are covered and certain others are not, it would be impossible to allocate the parties' respective responsibilities for those damages in the declaratory judgment action without itemization of the jury's verdict. Given that the declaratory judgment action is in its infancy, it appears unlikely that these declaratory judgment issues will be resolved in advance of the trial of this cause.

by Old Republic"; and (3) the applicable rules do not permit a party to intervene as a "silent party." (Thomas Objection, at 2.)

The Court finds that Thomas's objections are by turns misguided and unavailing. His first objection is one that should be raised, if at all, by Sky King and Linner, who have remained silent in the face of Old Republic's Motion.[15] Meanwhile, his second objection reflects a misapprehension of the relief sought. As the Court understands it, Old Republic does not intend to ask the jury to interpret Policy language or to award relief through the prism of that Policy. Rather, Old Republic merely wishes to have the jury identify which of the 16 causes of action are the bases for any plaintiff's verdict they reach and break down the damages into certain enumerated categories.[16] The risk of jury

confusion appears remote. Finally, Thomas's third objection—that it is improper for Old Republic to be a "silent" party in this case—is equally flawed. Old Republic is not seeking to interpose any claims against anyone in this action, and no claims have been asserted against it. It will not and should not be an active litigant in this matter. To the extent Thomas maintains that there is something inherently nefarious and improper about an insurer intervening for a limited purpose without the jury's knowledge, the Court disagrees. There is no conceivable reason for the jury to be apprised that Old Republic—rather than Sky King, Linner, or any other party—was the animating force behind any particular special verdict form or interrogatories that they might receive.[17]

**15.** Besides, Thomas's contention that Sky King and Linner are prejudiced by Old Republic's request may not be true at all. Old Republic cites *Alabama Hosp. Ass'n Trust v. Mutual Assur. Soc'y of Alabama*, 538 So.2d 1209, 1216 (Ala.1989) for the proposition that where a jury verdict could have been based on covered or non-covered claims, the insured cannot prove the fact of coverage—so as to secure indemnification under an insurance policy—without a special verdict. More generally, given that Sky King and Linner are currently embroiled in a separate coverage lawsuit with Old Republic, it would appear to behoove both insurer and insureds to have a clear record establishing the claims and categories of damages for which any plaintiff's verdict is awarded, so as to enable all parties to ascertain their respective rights and liabilities under the Policy with respect to that specific verdict. Absent such clarity, Sky King and Linner's attempts to enforce their rights under the Policy may be stymied by their inability to disentangle the portion of the damages award (if any) that is covered under the Policy from the portion of the award (if any) that is not.

**16.** The Court recognizes, of course, that such interrogatories, considered in the abstract, may seem far less confusing than they will appear on the printed page. However, the Court's ruling today in no way guarantees Old

Republic the right to submit the interrogatories or verdict form of its choice (or any interrogatories or verdict form at all) to the jury, nor does it foreclose the parties from lodging specific objections to the form or content of those materials once they have had an opportunity to review same. Rather, the Court's ruling does nothing more than permit Old Republic to submit a proposed verdict form or jury interrogatories to the Court for consideration at trial. The propriety and suitability of Old Republic's proposed requests are best addressed at trial, rather than as abstract concepts some three months in advance.

**17.** The case on which Thomas relies in support of his argument that silent party status is not countenanced by the Federal Rules of Civil Procedure is easily distinguished. In *Mansfield v. Paxon*, 899 F.2d 649 (7th Cir. 1990), the Seventh Circuit affirmed the rejection of an insurance company's motion to intervene in an automobile accident case as a "silent party plaintiff ... so that the jury would not award the named plaintiff a lesser sum, knowing that he had already been reimbursed by" that insurance company. *Id.* at 650–51. Unlike the insurance company in *Mansfield*, Old Republic would not be asserting any claims against anyone or otherwise acting as a formal party raising or defending

### C. Analysis.

■ Old Republic's Motion is governed by Rule 24(b)(2), Fed.R.Civ.P., which provides in pertinent part that "anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." *Id.* The rule goes on to caution that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* "A district court's discretion under Rule 24(b) is broad." *High Plains Co-op. Ass'n v. Mel Jarvis Const. Co.*, 137 F.R.D. 285, 287 (D.Neb.1991) (citing *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972)). However, "Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999).[18]

■ There is no question that Old Republic's proposed intervention has questions of fact in common with those of the pending action.[19] Moreover, there has been no showing that allowing this limited intervention will delay or prejudice adjudication of the rights of any party to this action. On the contrary, the timetable for trial will be unaffected, and no party would appear to suffer adverse effects from an order allowing Old Republic to request that a special verdict form or interrogatories be presented to the jury at trial. Once Old Republic files its proposed special verdict form or interrogatories, all parties will be given a reasonable opportunity to be heard before the Court rules on whether such documents will be used.

There is scant federal precedent on the issue of whether an insurer should be allowed to intervene on the limited basis sought here. The little judicial guidance that does exist is decidedly mixed. *Compare Fidelity Bankers Life Ins. Co. v. Wedco, Inc.*, 102 F.R.D. 41, 44–45 (D.Nev. 1984) (allowing insurance company to intervene for the limited purpose of proposing special interrogatories and verdict forms for potential submission to the jury) and *Plough, Inc. v. International Flavors and Fragrances, Inc.*, 96 F.R.D. 136, 137 (W.D.Tenn.1982) (similar) *with Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 877 (2d Cir.1984) (finding that district judge did not abuse discretion in denying insurer's request to intervene to submit proposed interrogatories) and *High Plains*, 137 F.R.D. at 285 (denying request for limited intervention where district court was skeptical of insurer's claimed policy limitations and exclusions and was concerned about potential conflict of interest for insured's counsel, who was hired by insurer). Even in *Restor–A–Dent*, however, the appellate court hastened to add that, while it was affirming the denial of the motion, "in view

---

against any claims, and would clearly not be acting as a "stealth party."

**18.** Although not raised in the parties' objections to Old Republic's Motion, the Court notes that permissive intervention ordinarily must be supported by independent jurisdictional grounds. *See International Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 346 (1st Cir.1989). However, Old Republic properly asserts that it is exempt from that requirement given that it does not seek to litigate a substantive claim here. *See*

*E.E.O.C. v. National Children's Center, Inc.*, 146 F.3d 1042, 1047 (D.C.Cir.1998) (requirement of independent jurisdictional basis does not bar permissive intervention where would-be intervenor is not attempting to litigate a substantive claim thereby).

**19.** Thomas acknowledges as much in his brief, where he "concedes that a common question of fact exists" between the alleged wrongful acts of Sky King and Linner and the coverage questions under the Old Republic Policy. (Thomas Brief, at 4.)

of the economy of time and effort inherent in the use of interrogatories in this situation, it would likewise not have been an abuse of discretion had the trial judge permitted the insurer to intervene under Rule 24(b)(2) for the limited purpose of proposing interrogatories to the court for submission to the jury." 725 F.2d at 877.

After due consideration of the objections registered by Henderson and Thomas, and careful weighing of the potential of delay or prejudice in the adjudication of the rights of the parties in the original action, the Court is of the opinion that Old Republic should be granted leave to intervene. Old Republic has filed a separate declaratory judgment action in this District Court against its insureds. Absent an itemized jury verdict in this case, resolution of the coverage issues at stake in the declaratory judgment action could be complicated considerably, as there would be no way to distinguish among the types of claims and damages embraced by any damages award the jury might render.[20] Besides, even if a general verdict in this case could be separately disaggregated in the declaratory judgment action, "the possibility that relitigation of the same issue may be avoided is a strong reason to permit intervention." *Fidelity*, 102 F.R.D. at 44. The Court recognizes that there may be a slight possibility of prejudice or delay if Old Republic is permitted to intervene, given the potential that a conflict might emerge between insurer and insured, that the insured's counsel may be placed in an untenable position, or that these proceedings may otherwise be disrupted. However, this contingency may be obviated or at least minimized through imposition of procedural safeguards.

In concluding that Old Republic may intervene, the Court concurs with the *Fidelity* court that it is appropriate to "condition intervention upon certain particulars." 102 F.R.D. at 44; *Southern v. Plumb Tools, a Div. of O'Ames Corp.*, 696 F.2d 1321, 1323 (11th Cir.1983) (noting court's power to impose conditions on intervention pursuant to Rule 24(b)). As in *Fidelity*, the Court will allow Old Republic to intervene provided that: (1) "[i]n this action any right to proffer special interrogatories or verdicts would not infer or imply that the Court would feel obligated to submit them to the jury"; and (2) Old Republic "may not compromise the interests of [its] insureds herein." *Fidelity*, 102 F.R.D. at 44. Additionally, all parties should understand that insurance coverage or Policy interpretation issues will *not* be litigated in this case, that Old Republic may not interfere with Sky King and Linner's defense against Thomas's claims, and that any concerns regarding potential violations of these conditions should be brought to the Court's attention immediately. Subject to strict compliance with these conditions, Old Republic's Motion for leave to intervene is granted.

## IV. Conclusion.

For all of the reasons set forth herein, defendant Henderson's Motion for Judgment on the Pleadings is **denied**. Old Republic's Motion for Leave to Intervene is **granted**, provided that all conditions described above must be satisfied in their

---

**20.** For that reason, Thomas's proposed solution that the Court "should ... allow Old Republic and its Insureds to resolve the conflict between them in the declaratory judgment action" (Thomas Brief, at 5) is facile, given the dimensions of Old Republic's concern. Litigation of the coverage issues absolutely should be confined to the declaratory judgment action; however, without some specificity in the jury's verdict in this case, those coverage issues may not be amenable to effective resolution in the declaratory judgment action or anywhere else.

entirety. Old Republic is **ordered** to file and serve a proposed special verdict form or interrogatories not later than 9:00 a.m. on the first day of trial in this cause, so as to afford opposing counsel a full and fair opportunity to review and object to same before the jury is charged. Old Republic's counsel is further **ordered** to attend the jury charge conference in this action, so as to enable the Court to hear such oral argument as may be appropriate before ruling on the suitability of Old Republic's specific requested interrogatories or special verdict form. Failure of Old Republic to satisfy these requirements will be deemed a waiver of its right to intervene.