BRADLEY, Judge.
This appeal arises from a jury verdict assessing damages in the amount of $6,221 for the plaintiff-appellee, Clarence Powell.
A complaint was filed by Powell consisting of two counts. The first count claimed the defendant-appellant, Beltline, Inc. [hereinafter Beltline] and Ray Sumlin Construction Company owed him $6,506 for work and labor done and materials supplied at the defendants’ request at Place Levert. Count two claimed he was owed $350 for work and labor done and materials supplied at the defendants’ request at 160 South McGregor Avenue, Mobile Alabama. These allegations were answered as untrue and the defendants claimed they were not indebted.
Beltline filed a counterclaim demanding $6,500 as damages. The counterclaim stated Powell and Beltline entered into a contract and Powell agreed to put in asphalt driveways in Place Levert and Beltline agreed to pay $4,682 for the work. Furthermore, Beltline averred Powell agreed to do work according to plans furnished; Belt-line paid Powell $4,000; and Powell either failed or refused to complete the work, or so damaged the property that extensive repairs must be done to complete the job according to the plans.
Oral testimony reveals there was an oral contract between Beltline and Powell for the asphalt paving of a parking lot at Place Levert, a condominium project. Ray Sum-lin, a major stockholder in Beltline, said the agreed price for the work was between $4,700 and $4,800. Powell testified the agreed price for the Place Levert job was $4,853. Powell also agreed to pave a driveway at Dr. Martinson’s residence for $305.
Powell testified he never saw any plans or specifications for the Place Levert job. Mr. Sumlin testified he did not know whether plans had been delivered; but said Powell had access to the plans and Skelton, supervisor of the project, claimed there were plans on the jobsite.
Powell claimed Skelton called ali the shots on the blue top hubs that were set for the grading of the parking lot at the Place Levert job, and when the hubs were set he graded to the hubs. Skelton claimed he set only a few and was relieved of responsibility by his employer. Powell remembered nothing about Skelton being relieved and claims Skelton was with him the entire job.
Skelton said catch basins for water drainage were in before Powell began the job. Powell said that after he had graded one way, the catch basins were put in and he had to then totally change the grade.
Skelton testified curbs around a parking island were put in after Powell first paved the lot. Powell testified one or two days after he paved the lot the first time, cement trucks came in to put the curbs in and the asphalt gave way, thus causing ruts in the asphalt. Skelton testified the curbs were not put in the day after the initial paving because there is a certain waiting period for the asphalt; however, Skelton did not have any idea as to how long the waiting period was.
Powell said he fixed the places where the trucks had been and all the holes that were driven in the asphalt by “two by four” stakes used to make the curbs around the island. He further testified he had to go *922 over the entire job a second time at Belt-line’s request, and used about the same amount of asphalt for the second job. Skel-ton testified Powell merely patched places where water stood in the lot.
A check from Beltline in the amount of $4,000, dated July 18,1974, made payable to Powell, was received by Powell after the work was done. Powell did not question the amount of the check at that time; although Powell testified he expected to be paid for the extra work he did. It is undisputed Powell never sent Sumlin an invoice for the amount of the extra work done.
Sumlin testified after Powell finished the job, there were water drainage problems. Water stood in the parking lot anywhere from an inch to an inch and a quarter. Beltline added another catch basin and pipe to help the drainage problem after Powell paved the lot the second time.
Powell’s opinion as to the reasonable value of his services performed in the “repairing” of the lot at Place Levert was that of the original contract price, namely, $4,853.
In regard to the Martinson paving job, Sumlin testified he did not pay Powell for it because Powell did a bad job. Powell said the job was done in a workmanlike manner and his men went back to put sealer over the job and to make a few changes.
An estimate of the costs for Beltline to fix the asphalt so it would drain correctly was set at $6,500.
At the close of the defendant’s evidence, Powell moved for a directed verdict. Such motion was denied.
The trial court gave instructions to the jury. Part of the instructions stated:
The Plaintiff has sued on a contract and for work and labor done. And, the Defendant has filed a counterclaim in the case.
If the Plaintiff performed this contract in a good and workmanlike manner then he would be entitled to recover the contract price agreed upon between the parties. The Plaintiff would also be entitled to recover extras; that is, extra work done by him. If such work was done either at the request of the Defendant or by actions or conduct of the Defendant necessitating extra work and accepted by the Defendant. Of course, the Plaintiff would not be entitled to recover for any extra work done by him, if the work should have been done in the first instance under any contract. [Emphasis added.]
He also told the jury they were entitled to award interest for either the plaintiff or the defendant at the rate of six percent per annum. An objection was made by the defendant, Beltline, to the instruction that a “suit had been filed for a contract . and for work and labor done.” The ground for objection was that the only count in the case was for work and labor done. Further objection was made to the charge that the “jury . . . could return a verdict . on the agreed price of the contract.” Ground for the second objection was the correct measure for work and labor cases is a reasonable value of the services performed.
Two issues come before us for review: (1) whether the trial court’s charge to the jury that the plaintiff had sued on a contract and for work and labor done was reversible error; and (2) whether the jury verdict was excessive and against the great weight of the evidence.
Beltline claims the instruction given the jury is erroneous and misleading. Beltline argues the complaint failed to allege contract and was never formally amended; therefore, the only count upon which Powell could recover is for “work and labor done.” Beltline further argues a special contract is not admissible to prove the reasonable value for work and labor done beyond the terms of the contract. Lastly, Beltline claims the instruction was correct as to the Martinson job because no recovery was sought for extra work on the job; therefore, contract price was admissible as to the Martinson job, but misleading as the Levert job.
This court notes Rule 51, ARCP, states in pertinent part:
At the close of the evidence or at such earlier time during the trial as the court *923 reasonably directs, any party may file . written requests that the court instruct the jury on the law. No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Submission of additional explanatory instructions shall not be required unless requested by the court. [Emphasis added.]
We find Beltline made an objection in compliance with the above rule; however, there is a question raised in regard to whether we may review both of Beltline’s alleged errors, namely that the instruction was erroneous and misleading. Feazell v. Campbell, Ala., 358 So.2d 1017 (1978), held where instructions could mislead the jury, explanatory charges should be requested, and failure to make such a request disallows a party to complain of such a matter on appeal. Contra: Great Northern Land and Cattle, Inc. v. Firestone Tire and Rubber Co., Ala.Civ.App., 337 So.2d 1323 (1976) (held objecting party could claim error under Rule 51, ARCP, even though it did not file written requests before the court instructed the jury or after objection was made). In Great Northern, as in the instant case, no request was made by the trial court for explanatory charges.
At this point it becomes apparent that it has been unclear as to whether explanatory charges are necessary in addition to an objection made with the reasons therefor to preserve an alleged error in an instruction on appeal. This court notes, however, the recent case of Robinson v. Harris, Ala., 370 So.2d 961 (1979) in which the supreme court, in dealing with an alleged error of “incomplete” instructions, said an objection was sufficient to predicate reversible error on, and that Rule 51, ARCP, effects a change from former practice which had made the request for an explanatory charge necessary to preserve error on appeal. We will thus follow the Robinson case and review both errors claimed by Beltline in the instant case.
Rule 15(b) provides in part:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.
Evidence of an oral contract was presented in this case without objection; the trial judge thus had a duty to determine the issue of whether a suit on contract by the plaintiff was presented. The court was not limited to the theory raised in Powell’s complaint. Cf. Underwriters Salvage Co. v. Davis & Shaw Furniture Co., 198 F.2d 450 (10th Cir. 1952) (trial without jury). Because evidence of a contract was before the court, the trial judge could instruct the jury as to a suit on contract, as well as a suit for work and labor.
However, Alabama case law allows a party to sue under the “common counts” where there is a special contract which has been fully performed on one side and all that is left is the payment of money. A party may then introduce the contract price to show the character of the services rendered, the length of time, and also the value of the services. Republic Steel Corporation v. Gilbert, 38 Ala.App. 227, 83 So.2d 370 (1955).
Thus, Powell could have sued on contract or under the common counts, as he originally chose to do, for both the Martin-son and Levert jobs. Evidence of an oral contract and contract price was presented as to both jobs without objection. In addition, it was undisputed that Powell was paid $4,000 of the agreed price on the Le-vert job. The judge’s instruction provided if the contract was found to be done in a workmanlike manner, Powell would be al *924 lowed to recover the contract price. It is unclear as to which job this specific instruction is referring or to which theory it is aimed.
We take note, however, that reversible error in the giving of instructions occurs only where the error is prejudicial when the trial court’s instructions are viewed as an entity. Underwriters National Assurance Co. v. Posey, Ala., 333 So.2d 815 (1976). After reviewing the instructions as a whole, it appears the judge was properly addressing an action on contract and/or under the common counts when he made the instruction on contract price recoverable. According to Howell v. Dodd, 229 Ala. 393, 157 So. 211 (1934), if a contract is made fixing the sum for services for work and labor then recovery is limited to the sum agreed upon, i. e. contract price. In regard to the extra, work, the judge said extras would not be awarded unless it was found the work was done in a workmanlike manner. He did not advise the jury as to the measure of recovery or as to the theory of a suit for extra work. However, it is established that where services of a person are knowingly accepted and a benefit results, the law implies a promise to pay a reasonable value. Huffman—East Development Corp. v. Summers Electric Supply Co., 288 Ala. 579, 263 So.2d 677 (1972). In the case at bar little evidence was introduced to show reasonable value of “extras” done, except for the original contract price of the Levert job. 98 C.J.S. Work & Labor § 65b(l) suggests all factors tending to throw light on the question of reasonable value of services, work and labor, or incidental materials, should be considered. Additionally, it is suggested where there is no express contract, the price paid a party on previous occasions for similar services is a proper matter to consider in ascertaining the reasonable value of work and labor.
In view of the foregoing, we find no error sufficiently prejudicial to warrant reversal.
In the absence of a motion for a new trial, Beltline cannot claim as error on appeal that the verdict was contrary to the great weight of the evidence or excessive. See: Leavell v. Nolin, Ala.Civ.App., 342 So.2d 1323 (1977) (dealing with weight of the evidence); Feazell v. Campbell, supra (dealing with excessive verdict).
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.