BRYAN, Judge.
The defendant Annette Johnson appeals a summary judgment in favor of the plaintiff Gary L. Jester, P.C., d/b/a Jester and Jenkins (“Jester”). We reverse and remand.
On June 5, 2001, Jester, a law firm, sued Johnson. Jester alleged that Johnson had employed it to represent her in a grandparent-visitation proceeding and to perform other legal work related to her deceased daughter’s estate and that Johnson owed Jester a total of $8,055.85 in unpaid fees. Jester sought recovery of the $8,055.85 pursuant to three theories: -(1) breach of contract, (2) account stated, and *308 (3) quantum meruit. Jester did not demand a jury trial.
In her answer, Johnson denied that she owed Jester any fees and asserted the affirmative defenses of setoff, payment, satisfaction, and the Statute of Frauds. Johnson demanded a jury trial.
In October 2004, Jester filed a summary-judgment motion, which the trial court denied on a procedural ground without addressing the merits of the motion. In January 2005, Jester filed an amended complaint in which it dismissed its claims alleging breach of contract and account stated and again alleged the same claim of quantum meruit it had alleged in its original complaint. That same day, Jester moved for a summary judgment on its quantum meruit claim. Jester also filed a motion to strike Johnson’s demand for a jury trial on the ground that Johnson was not entitled to a jury trial on Jester’s quantum meruit claim.
In response, Johnson filed a pleading in opposition to Jester’s summary-judgment motion, moved the trial court to strike Jester’s amended complaint, and filed a pleading in opposition to Jester’s motion to strike Johnson’s demand for a jury trial.
Jester supported its summary-judgment motion with, among other things, a copy of a check dated June 1, 2000, that Johnson had made payable to Jester; copies of the letters Jester had sent Johnson while it was representing her; copies of the bills Jester had sent Johnson while it was representing her; and the affidavit of Willson Jenkins (“Jenkins”), the Jester attorney who had dealt with Johnson. In pertinent part, Jenkins’s affidavit stated:
“I am a partner in the law firm of Gary Jester, P.C., an Alabama professional corporation doing business as ‘Jester & Jenkins.’ The defendant, Annette Johnson, and I consummated an attorney-client relationship in June 2000. In particular, I provided legal services to the defendant in her attempt to obtain visitation rights with her grandson .... I also investigated and handled several probate issues concerning the defendant’s deceased daughter’s estate. The services that I provided were beneficial to the defendant: for example, she obtained visitation rights with her grandson. The defendant was unhesitatingly and knowingly accepting of both the legal services I provided, and the benefits obtained from those services.
“Understandably, I expected to be reasonably compensated for the legal services provided to the defendant. The defendant paid a retainer fee on June 1, 2000. (See [a copy of Johnson’s check made payable to Jester with ‘retainer fee’ written on it]). It was my understanding, as well as that of the defendant’s, that this was only the initial payment — the first installment, if you will, paid by the defendant to reasonably compensate me for my services to her. In fact, I informed the defendant that she could expect the legal services to cost up to $15,000 for trial due to the fact that her legal issue was one of first impression in Alabama.
“I documented the number of hours and the type of work provided to the defendant. I submitted three different billing statements to the defendant, informing her of how much she owed the plaintiff. The defendant did not object, or say this wasn’t our agreement. In fact, the defendant said she was raising the money through a Halloween fundraiser, and told me that the ‘cost was not a problem.’ ”
Johnson opposed Jester’s summary-judgment motion with her affidavit and the affidavit of a friend who had accompanied her to Jester’s office on one occasion. In pertinent part, Johnson’s affidavit stated:
*309 “When I first met with R. Willson Jenkins on June 1, 2000, R. Willson Jenkins told me that his hourly fee rate was One Hundred Twenty-Five Dollars and No Cents ($125.00). I told R. Willson Jenkins my husband was off of work due to an injury and my husband and I were totally dependant upon my hourly wages. I told R. Willson Jenkins that I could not afford to pay him $125.00 per hour to represent me. I told R. Willson Jenkins the only way I could employ him to represent me would be if he could tell me the exact total amount of what his attorney fees would be to represent me, and, if he could not do that, I would have to get another attorney to represent me.
“On June 1, 2000, R. Willson Jenkins told me he would represent me for the flat total attorney’s fee of Nine Hundred Seventy-Five Dollars and No Cents ($975.00) plus the expenses of any deposition^), subpoenas, and court costs.
[[Image here]]
“On June 1, 2000, R. Willson Jenkins and I entered into a verbal employment agreement that R. Willson Jenkins would represent me for the total amount of attorney fees of Nine Hundred and Seventy-Five Dollars and No Cents ($975.00). On June 1, 2000, I wrote a personal check made payable to R. Will-son Jenkins for the amount of One Thousand Dollars and No Cents ($1,000.00) — $975.00 for the total attorney’s fees that R. Willson Jenkins told me he would represent me for plus $25.00 toward the payment of costs and expenses. R. Willson Jenkins and I never reduced our verbal employment agreement to writing.
“R. Willson Jenkins and the Law Firm of Jester and Jenkins could never have had a reasonable expectation that I could pay them more in attorney fees than the Nine Hundred Seventy-Five Dollars and No Cents ($975.00) I paid to R. Willson Jenkins on June 1, 2000. I made it perfectly clear to R. Willson Jenkins that I did not have the means or wherewithal to pay any more in attorney fees. On June 1, 2000, R. Willson Jenkins told me that he understood and that the Nine Hundred Seventy-Five Dollars and No Cents ($975.00) would be all that I would have to pay in attorney’s fees.”
The trial court held a hearing on all pending motions on February 10, 2005. Johnson argued that the trial court should strike Jester’s amended complaint because Jester had not complied with Rule 15(a), Ala. R. Civ. P. Specifically, Johnson argued that, because Jester amended its complaint less than 42 days before the first trial setting, Rule 15(a) required that Jester first obtain leave of the trial court to file its amended complaint, a requirement that Jester had not met. Johnson also argued that Rule 41(a)(2), Ala. R. Civ. P., prohibited Jester from unilaterally dismissing its breach-of-contract and account-stated claims so late in the proceedings.
With regard to the merits of the summary-judgment motion, Johnson argued, among other things, that her affidavit testimony established a genuine issue of material fact regarding one of the essential elements of Jester’s quantum meruit claim. Specifically, she argued that Jester was required to prove, as an essential element of its. quantum meruit claim, that Jester had a reasonable expectation that it would be paid more than a flat fee of .$975.00 for its services and that Johnson’s affidavit testimony to the effect that Jenkins had agreed to provide the legal services for a flat fee of $975.00 established the existence of a genuine issue of material fact regarding that essential element.
On February 23, 2005, the trial court entered a judgment denying Johnson’s motion to strike Jester’s amended complaint *310 and entering a summary judgment in favor of Jester on its quantum meruit claim. Explaining the trial court’s rationale for entering a summary judgment in favor of Jester, the judgment, in pertinent part, stated:
“The law in Alabama regarding quantum meruit is ‘that if one knowingly accepts services rendered by another and the benefit and result thereof, the law implies a promise on the part to the one that so accepts with knowledge, to pay the reasonable value of such services rendered.’ CIT Group/Equipment Fin., Inc. vs. Roberts, 885 So.2d 185, 190 (Ala.Civ.App.2003). The Plaintiff must also demonstrate that he had a reasonable expectation of compensation. Id. Finally, the measure of damage for a successful claim based on the theory of quantum meruit is the reasonable value to the benefactor of the services provided. Beltline, Inc. vs. Powell, 371 So.2d 920, 924 (Ala.Civ.App.1979).
“(1) [Johnson] knowingly accepted the legal services provided to her by [Jester]. There is no issue of fact with respect to this first element. [Johnson’s] affidavit conclusively established that she knowingly accepted the legal services provided by [Jester]. See Affidavit of Annette Johnson. In other words, [Johnson] was aware that R. Willson Jenkins was her lawyer. [Johnson] did not terminate the attorney/client relationship until after the Lauderdale County Circuit Court granted, as a result of [Jester’s] legal services and representation, grandparental visitation rights to [Johnson].
“(2) [Jester] established a prima facie case that there was no genuine issue of material fact concerning whether it had a reasonable expectation of being compensated at an hourly rate for the legal services provided to [Johnson]. [Johnson] failed to provide substantial evidence rebutting [Jester’s] prima facie case and thus creating a genuine issue of material fact concerning this issue.
[[Image here]]
“(b) [Johnson] fails to set forth substantial evidence rebutting the prima fa-cie showing made by [Jester]. [Johnson] submitted affidavits by Annette Johnson and Rebecca Johnson with her response to [Jester’s] motion for summary. judgment. [Johnson] submitted no other evidence to rebut the prima facie showing made by [Jester]. (Mov-ant’s [sic] affidavit was insufficient to create a genuine issue of material fact.) Robertson vs. Woodward, 607 So.2d 198, 199 (Ala.1992).
“Importantly, neither the affidavit of Annette Johnson nor the affidavit of Rebecca Johnson represent substantial evidence rebutting [Jester’s] prima facie showing. First, neither affidavit explains why [Johnson] wrote ‘retainer fee’ on the initial check she submitted to [Jester] on June 1, 2000, if, as she says, [Jester] was only charging her a $975.00 flat fee.
“Second, the affidavits fail to substantially discuss or rebut the inferences to be drawn from the billing statements, accompanying letters and proposed promissory note submitted by [Jester] to [Johnson]. For example, [Johnson’s] affidavit does not explain why [Jester] submitted billing invoices and proposed promissory note (for the total sum of $8,055.00) where [Johnson] alleges that [Jester] only expected to be paid the $975.00 flat fee. [Johnson] did not object to these billing invoices nor complaint ] to [Jester] that this was not the agreement previously agreed to by the parties. See affidavit of R. Willson Jenkins. [Johnson’s] affidavit also fails to deal with the inconsistency between the *311 fact that she paid [Jester] a second $1,000.00 on January 18, 2001 (for $2,000 total) and her contention that [Jester] agreed to represent her for a $975.00 flat fee.
“[Johnson] failed to present substantial evidence rebutting [Jester’s] prima facie showing. [Johnson] therefore failed to create a genuine issue of material fact on the question of whether [Jester] held a reasonable expectation of being compensated at any hourly rate.
“(3) [Jester’s] motion, and attachments thereto, conclusively establish the reasonable value of the legal services provided by [Jester]. [Jester] attached to its summary judgment motion billing invoices compiled by [Jester] and submitted to [Johnson] during the attorney/client relationship. The invoices set forth the amount of time spent by [Jester], along with the specific type of legal service provided. The invoices further show that [Jester] billed [Johnson] at a rate of $125.00 per hour. Importantly, [Johnson] contested only whether [Jester] held a reasonable expectation of being compensated at an hourly rate. [Johnson] failed to present substantial evidence on the issue of whether the rate of $125.00 per hour is a reasonable rate to be charged for the legal services provided to [Johnson], As such, there is no genuine issue of material fact concerning the issue of reasonable value of the services performed.”
The judgment did not rule on Jester’s motion to strike Johnson’s demand for a jury trial — presumably because the entry of a summary judgment in favor of Jester rendered that motion moot.
On March 24, 2005, Johnson filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the judgment. As a ground for the motion, Johnson asserted that the trial court had erred in denying her motion to strike Jester’s amended complaint because, Johnson said, Jester had not complied with the requirements of Rules 15(a) and 41(a)(2). With respect to the summary judgment in favor of Jester, Johnson argued, among other things, that the summary judgment was erroneous because, she said, her affidavit testimony had established the existence of a genuine issue of material fact regarding whether Jester had a reasonable expectation of receiving more than a flat fee of $975.00 for the legal services it provided Johnson.
Following a hearing on Johnson’s post-judgment motion, the trial court, on May 18, 2005, entered an order denying that motion. Johnson then timely appealed to this court.
On appeal, Johnson argues that the trial court erred in allowing Jester to amend its complaint because the amendment of the complaint at such a late stage of the proceedings prejudiced her.[1] “ ‘ “ ‘[T]he grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion.’ ” ’ ” Deakle v. Childs, 939 So.2d 936, 939 (Ala.Civ.App.2006) (quoting Rector v. Better Houses, Inc., 820 So.2d 75, 78 (Ala.2001), quoting in turn Boros v. Baxley, 621 So.2d 240, 245 (Ala.1993)). *312 Jester’s amendment neither alleged a new factual basis for a claim nor alleged a new theory of recovery; it merely dismissed two of Jester’s claims. Therefore, the amendment neither caused a delay in the litigation nor prejudiced Johnson. Accordingly, we find no abuse of discretion in the trial court’s allowing the amendment.
Johnson also argues that the trial court erred in entering a summary judgment in favor of Jester because, she says, her affidavit testimony to the effect that Jenkins agreed to provide her with legal services for a flat fee of $975.00 established the existence of a genuine issue of material fact regarding whether Jester could reasonably expect to receive more than a flat fee of $975.00 for those services. We agree. Johnson’s testimony directly contradicted Jenkins’s testimony. However, instead of denying the summary-judgment motion because of this conflict in the evidence regarding an essential element of Jester’s claim, the trial court purported to eliminate the conflict by rejecting Johnson’s testimony. The trial court found that, in the absence of an explanation by Johnson, the presence of the words “retainer fee” on her June 1, 2000, check and her second payment of $1,000.00 belied her testimony that Jenkins had agreed to a flat fee of $975.00. This court has stated:
“Appellate courts must keep in mind that in reviewing summary judgments, we are to view the evidence in the light most favorable to the nonmovant, and we must draw all reasonable inferences in [the nonmovant’s] favor. Crowne Investments, Inc. v. Bryant, 688 So.2d 873 (Ala.1994). Our task, as well as that of the trial court, is merely to determine whether the nonmoving party has presented sufficient evidence to create a genuine issue of material fact. At the summary judgment stage, we are not to weigh the nonmoving party’s evidence against that of the moving party to determine whose evidence we believe, or whether the moving party has a stronger case, or whether either party has proved his case — we only determine ivhether a genuine issue of material fact exists ....”
Kovalchick v. South Baldwin Hosp., 695 So.2d 1199, 1202 (Ala.Civ.App.1997) (emphasis added). Thus, the trial court erred by weighing and rejecting Johnson’s testimony instead of determining whether Johnson had submitted sufficient evidence to establish a genuine issue of material fact.
Because Johnson’s affidavit testimony established the existence of a genuine issue of material fact regarding the existence of an essential element of Jester’s claim, we must reverse the summary judgment in favor of Jester and remand the case for further proceedings consistent with this opinion. Our resolution of this issue renders the remaining issues raised by Johnson moot.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. Johnson cites Rule 41(a)(2), Ala. R. Civ. P., as well as Rule 15(a), Ala. R. Civ. P., in support of this argument. However, Johnson has not cited to us any authority standing for the proposition that Rule 41(a)(2), which deals with a plaintiffs voluntary dismissal of an entire action, applies to an amendment of a complaint that dismisses fewer than all of the plaintiff's claims. In the absence of a citation to authority standing for that proposition, this court need not consider Johnson’s argument with respect to Rule 41(a)(2). See Ex parte Showers, 812 So.2d 277, 281 (Ala.2001).