This is a legal malpractice action. The plaintiff, George Boros, acting pro se, presents five issues: whether the trial judge erred in (1) directing a verdict for the defendants; (2) refusing to recuse himself from the case; (3) denying Boros's request for a continuance; (4) granting the defendants' motion in limine as to punitive damages and damages for mental anguish; and (5) denying Boros's motion to amend his complaint. We affirm.[1]
Boros sued William Baxley, Charles Dauphin, and the law firm of Baxley, Stuart, Ward Dillard, alleging legal malpractice; specifically, Boros alleged that in an earlier case they had failed to file his complaint within the statutory period of limitations. The underlying case involved Boros's purchase of real estate from Jack Shewmake. Boros had employed Gwen Palmer, an agent of the real estate company of Johnson-Rast Hays, to help negotiate the purchase from Shewmake. After moving into the house, Boros found numerous problems.
Boros then retained the Baxley firm to sue Shewmake, Palmer, and Johnson-Rast Hays on the basis of fraudulent misrepresentation. Shortly after filing suit, the Baxley firm terminated its relationship with Boros because of a dispute over attorney fees. The trial court in the underlying case entered a summary judgment for Palmer and Johnson-Rast Hays, without stating a specific reason. Boros and Shewmake had settled their dispute before the summary judgment was entered. This Court affirmed the summary judgment, concluding that the applicable statute of limitations period had expired before the lawsuit was filed. Boros v. Palmer, 472 So.2d 1020 (Ala. 1985). On October 4, 1985, Boros filed the present suit.
In this action, Boros presented his evidence to a jury. On the defendants' motion, the trial court directed a verdict against Boros on the basis that he had failed to show that he would have recovered against Palmer and Johnson-Rast Hays in the underlying lawsuit alleging fraudulent misrepresentation had that case been timely filed. Boros appeals from the resulting judgment for the defendants. We affirm.
 The Directed Verdict Issue
Initially, we note that a motion for directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.;Alabama Power Co. v. Williams, 570 So.2d 589 (Ala. 1990); JohnR. Cowley Bros., Inc. v. Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin, Alabama Civil Procedure § 8.37 (1990). The ultimate question presented by the motion, of course, is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman Guin, supra, at § 8.37.
For actions filed on or before June 11, 1987, the applicable standard of review is the "scintilla evidence rule." Section12-21-12(e), Ala. Code 1975; Maharry v. City of Gadsden,587 So.2d 966 (Ala. 1991). Under the "scintilla evidence rule" the nonmovant could defeat a directed verdict motion by showing "a mere gleam, glimmer, spark, or trace of evidence" supporting each element of his cause of action or defense. See, e.g.,Gross v. Republic Steel Corp., 400 So.2d 383 (Ala. 1981), andGadsden Paper Supply Co. v. Washburn, 554 So.2d 983 (Ala. 1989).
Additionally, in reviewing a motion for directed verdict this Court must view all the evidence in a light favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would be free to draw. Williams v.Allstate Ins. Co., 591 So.2d 38 (Ala. 1991). *Page 242 
Concerning legal malpractice, this Court has stated:
 "[I]n a legal malpractice case a plaintiff must prove, basically, the same [elements] that must be proven in an ordinary negligence suit. Moseley v. Lewis Brackin, 533 So.2d 513, 515 (Ala. 1988); Tyree v. Hendrix, 480 So.2d 1176 (Ala. 1985). Thus, the elements [a plaintiff] must prove in order to support his legal malpractice claim are a duty, a breach of that duty, an injury, that the breach was the proximate cause of the injury, and damages. Moseley; Tyree; and Herston v. Whitesell, 348 So.2d 1054 (Ala. 1977). [Additionally,] [i]n a legal malpractice case, the plaintiff must show that but for the defendant's negligence he would have recovered on the underlying cause of action, Johnson v. Horne, 500 So.2d 1024 (Ala. 1986), or must offer proof that the outcome of the case would have been different. Hall v. Thomas, 456 So.2d 67
(Ala. 1984)."
McDuffie v. Brinkley, Ford, Chestnut Aldridge, 576 So.2d 198,199-200 (Ala. 1991).
The tort of fraudulent misrepresentation under § 6-5-101, Ala. Code 1975, requires "(1) a false representation, (2) regarding a material existing fact, (3) which the plaintiff relies upon, and (4) damages proximately caused by the misrepresentation." Smith v. J.H. Berry Realty Co.,528 So.2d 314, 316 (Ala. 1988); Ex parte Leo, 480 So.2d 572, 574 (Ala. 1985); and see, Country Side Roofing Sheet Metal, Inc. v.Mutual Ben. Life Ins. Co., 587 So.2d 987, 991 (Ala. 1991).
On appeal, the defendants maintain that Boros failed to prove that "but for [their] negligence he would have recovered on the underlying cause of action," because, according to the defendants, Boros failed to prove that he relied on any representations made by Palmer. After carefully reviewing the record, we conclude that the defendants are correct.
Our review of the record reveals not even a scintilla of evidence that Boros relied on Palmer's representations. In fact, Boros's own testimony establishes that he disbelieved Palmer's assertions and relied instead on assertions made by Shewmake. Boros testified[2] as follows:
 "But, Monday or Tuesday night — I'm not sure which — she [Palmer] came over to our hotel, the Mountain Brook Inn, to give us an offer, to have us sign an offer, and I said, 'I'd like to talk to the owner-builder.' I said, 'because I want to confirm what you say. I know that real estate agents have a habit of huffing and puffing. I want to confirm what you say, and most importantly, I want to make doubly sure there is no flooding.'
". . . .
 "We didn't sign it [the offer] until after I had talked with the owner-builder, Jack Shewmake. I told her [Palmer] I wouldn't sign it. I thought it was an offer, not a binding sale agreement, and I told her that.
 "I talked with Shewmake on the phone from my room at the Mountain Brook Inn for twenty-some minutes and I said, 'I'm concerned because we've had some bad luck with houses. Is there flooding?' [Shewmake's answer]: 'Oh, no, no, no, no. That was from construction.' [Boros]: 'Is it a well built house?' [Shewmake's answer]: 'Indeed, I build only good houses. It's all in here.' [Boros]: 'Is it energy efficient?' [Shewmake's answer]: 'Oh, yes, yes, yes.' "
(R. at 199-203; emphasis supplied.)
Additionally, this Court has stated:
 "To claim reliance upon a misrepresentation, the allegedly deceived party must have believed it to be true. If it appears that he was in fact so skeptical as to its truth that he placed no confidence in it, it cannot be viewed as a substantial cause of his conduct. . . . The undisputed fact that [the plaintiff] was unwilling to accept the statement of [the defendant] *Page 243 without verification is evidence that he did not rely on it."
Smith v. J.H. Berry Realty Co., 528 So.2d 314, 316 (Ala. 1988). (Emphasis supplied).
As in Smith, we conclude that a factfinder could not have found that Boros relied on Palmer's representations, because, according to his testimony, "he was in fact so skeptical as to [their] truth that he placed no confidence in [them]," and because he "was unwilling to accept [Palmer's representations] without verification." Id. Because Boros failed to establish a necessary element of his underlying fraudulent misrepresentation claim, necessarily he failed to establish his legal malpractice claim. The trial court properly directed a verdict for the defendants.
 The Recusal Issue
Boros argues that the trial judge erred in refusing to recuse himself from the case. According to Boros, the trial judge exhibited a "hostile, demeaning, and prejudiced or biased attitude" toward him. (Appellant's brief at 27-28.) Boros stresses several remarks made by the trial court and argues that these remarks establish prejudice directly resulting in the judge's entering a directed verdict for the defendants.
Initially, we note that a petition for a writ of mandamus is the proper method for challenging the denial of a motion for recusal. Ex parte Balogun, 516 So.2d 606 (Ala. 1987). However, because this is a pro se appeal, we address the issue.
The law in this area is well settled. The Canons of Judicial Ethics apply to all judges in this State and have the force and effect of law. Ex parte Balogun, 516 So.2d at 609. Canon 3 C. states:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."
(Emphasis supplied.)
This Court has interpreted Canon 3 C.(1) to impose a "reasonable person in the judge's shoes" standard. InHenderson v. G G Corp., 582 So.2d 529, 530 (Ala. 1991), this Court stated:
 "The test for recusal is whether a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would conclude that there is a reasonable basis for questioning the judge's impartiality."
However, a judge's recusal is not required by the "mere accusation of bias unsupported by substantial fact."Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982). Further, "there is a presumption that a judge is qualified and unbiased, and . . . one alleging to the contrary has a substantial burden of proof." Henderson, 582 So.2d at 530. Additionally, "[a]dverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice" on the part of a judge. Hartman v. Board ofTrustees of the Univ. of Alabama, 436 So.2d 837, 841 (Ala. 1983); Matter of Sheffield, 465 So.2d 350, 357 (Ala. 1984).
We have examined closely each of the remarks made by the trial court. We conclude that Boros has failed to establish that the trial judge should have recused himself.
 The Continuance Issue
Boros argues that the trial court improperly refused to grant him a continuance on the day of trial. Boros asserts that he was mentally and physically exhausted from preparing his own case and otherwise acting as his own counsel. He argues that the trial judge abused his discretion in refusing to continue the case.
Generally, parties acting pro se should be treated as parties represented by counsel are treated. See, Cofield v. McDonald'sCorp., 514 So.2d 953 (Ala. 1987); Hines v. City of Mobile,480 So.2d 1203 (Ala. 1985); Hubbard v. Montgomery, 372 So.2d 315
(Ala. 1979); and Lockett v. A.L. Sandlin Lumber Co.,588 So.2d 889 (Ala.Civ.App. 1991). *Page 244 
In particular, pro se litigants "must comply with legal procedure and court rules." Lockett, 588 So.2d at 890. Furthermore, "continuances are not favored and . . . a trial court's denial of a motion for continuance will be upset only when a palpable or gross abuse of discretion has been shown."Scullin v. Cameron, 518 So.2d 695, 698 (Ala. 1987).
Here, we note that this case began in October 1985. After every judge in the Tenth Judicial Circuit (Jefferson County) recused himself, this Court appointed Judge Billy C. Burney to handle the case. According to the defendants, Judge Burney attempted three times to have the case tried. Ultimately, Judge Burney retired before the case was tried, and Judge Robert Parker was appointed to handle the matter. Judge Parker granted Boros a continuance on May 28, 1991, and set the case for trial on October 21, 1991. On that trial date, Boros requested the continuance at issue here.
We find no abuse of discretion here. Boros had six years to prepare his case for trial. Further, the trial court was in a better position than is this Court to evaluate Boros's claims of mental and physical exhaustion and to rule on the motion for continuance.
 The Punitive Damages-Mental Anguish Issue
Boros argues that the trial court erred in granting the defendants' motion in limine regarding punitive damages and damages for mental anguish arising from the defendants' alleged legal malpractice. The defendants argue that Boros failed to preserve the error alleged in this regard. Because we conclude that the motion in limine here was of the "prohibitive-absolute" type, we disagree.[3]
However, the defendants argue that any discussion of damages for mental anguish was properly disallowed because Boros alleged only professional negligence and breach of contract in his complaint. Also, the defendants argue that the facts of this case do not support any claim for punitive damages, and, therefore, that the trial court correctly excluded any discussion of punitive damages.
We agree with the following statement by the Court of Civil Appeals:
 "There can be no recovery for emotional distress, where [the legal malpractice] does not involve any affirmative wrongdoing but merely neglect of duty, and the client may not recover for mental anguish where the contract which was breached, was not predominately personal in nature."
Dorsey v. Purvis, 543 So.2d 703, 704 (Ala.Civ.App. 1989) (quoting 7A C.J.S. Attorney and Client § 273 (1980)).
Here, Boros presented no evidence that the alleged malpractice involved *Page 245 
"affirmative wrongdoing" and no evidence that his contract with the defendants was "predominately personal in nature." Further, we agree with the defendants that the facts of this case did not warrant any mention of punitive damages. "Ordinarily, punitive damages are not recoverable for breach of contract."Corson v. Universal Door Systems, Inc., 596 So.2d 565, 572
(Ala. 1991). Also, some showing of fraudulent, malicious, willful, wanton, or reckless behavior or inaction must be made to support a claim for punitive damages in a legal malpractice case. Allowance of Punitive Damages in Actions Against Attorneyfor Malpractice, 13 A.L.R.4th 95 (1982 Supp. 1992).
 The Amendment Issue
Boros argues that the trial court erred in refusing him leave to amend his complaint on the day of trial to add counts alleging involuntary servitude and consumer fraud. The defendants argue that Boros had had five years to amend his complaint, and that he failed to explain to the trial court the pertinence and applicability of the additional counts.
The applicable version of Rule 15(a), Ala.R.Civ.P.[4], reads:
 "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders."
Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that "the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion." Schoen v. Styron, 480 So.2d 1187, 1189-90 (Ala. 1985); Ex parte Reynolds, 436 So.2d 873 (Ala. 1983). Further, this Court has stated:
 "Rule 15, [Ala.R.Civ.P.], is not carte blanche authority to amend a complaint at any time. Discretion rests in the trial judge to deny amendments for good cause. '[I]f the court determines . . . that a party has had sufficient opportunity to state a claim or revise his answer to a complaint but has failed to do so, leave to amend may properly be denied.' "
Ex parte Tidmore, 418 So.2d 866 (Ala. 1982) (quoting Stallingsv. Angelica Uniform Co., 388 So.2d 942, 946-47 (Ala. 1980)). (Citations omitted.)
We conclude that Boros had had ample opportunity to amend his complaint before the day of trial. Clearly, the trial judge did not abuse his discretion in disallowing Boros's requested amendment here.
We pretermit any discussion of Boros's new trial issue because it is merely repetitive of the directed verdict issue. Also, we pretermit discussion of the expert witness issue because we find it meritless factually.
Based on the foregoing, we affirm the trial court's judgment entered on the directed verdict for the defendants.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Although our holding on the directed verdict issue is dispositive of this case, we discuss the remaining issues because the plaintiff is acting pro se.
[2] Because Boros was a pro se plaintiff, the trial court allowed him to testify in a narrative fashion.
[3] The defendants cite State v. Askew, 455 So.2d 36, 37
(Ala.Civ.App. 1984), quoting Charles Gamble, The Motion in Limine:A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1, 16 (1981), for this proposition:
 "[I]t is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal."
(Emphasis in original.)
The defendants neglect Dean Gamble's next sentence and his earlier distinction between "prohibitive-absolute" and "prohibitive-preliminary" motions in limine.
In the sentence following the above quote, Dean Gamble states, "Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine." Gamble, supra, at 16.
Earlier in his article Dean Gamble distinguishes between "prohibitive-absolute" and "prohibitive-preliminary" motions in limine. Gamble describes the "prohibitive-absolute" motion in limine: "This motion and the order issued upon it being grantedabsolutely prohibit the opponent from questioning about ormentioning the evidence at trial in any form." Id. at 12. (Emphasis supplied.) Gamble says of the "prohibitive-preliminary" motion, "This motion and the accompanying order merely prohibit the opponent from offering, questioning about, or mentioning the evidence without firstobtaining the permission of the judge outside the hearing of the jury." Id. (Emphasis supplied.)
We conclude that the motion in limine here was of the "prohibitive-absolute" type. Thus, Boros was not required to raise the issue again to preserve it for appellate review.
[4] Rule 15(a) was amended effective August 1, 1992. The pre-amendment version would apply to this case. *Page 246