PARKER, Justice.
 

 Brady Farr appeals the Montgomery Circuit Court’s judgment entering summary judgments in favor of The Gulf Agency, Inc. (“Gulf Agency”), Orange Beach Insurance Agency, Inc. (“Orange Beach”),
 
 [1]
 
 and Lexington Insurance Company (“Lexington”) (hereinafter collectively referred to as “the insurance companies”). We affirm the trial court’s judgment in part and reverse it in part.
 

 Facts and Procedural History
 

 In the early 1980s, Farr purchased a house situated on a beachfront lot in Orange Beach on Perdido Beach Boulevard (“the property”). Farr’s deposition testimony indicates that he began renovating the house in the late 1990s and completed renovating it in 2003 at a total cost of approximately $568,000. Farr further testified that, in early 2004, he decided to sell the property to a developer, who was buying property on which to build a highrise condominium complex. Farr testified that, in anticipation of the sale, he obtained a loan of $1,000,000 secured by a mortgage on the property. As part of the loan process, Farr’s mortgage company ordered an appraisal of the property, which was performed by Ronald Holyfield on March 8, 2004 (“the Holyfield appraisal”). The property was appraised for a value of $1,325,710; the improvements on the property were valued at $313,000. Farr testified that he thought that the appraised value of the house was too low and that he contacted Holyfield to express his concerns. Farr testified that he did not give Holyfield any additional information concerning the value of the house and that he did not hire another appraiser to perform an additional appraisal.
 

 In March 2004, Farr sought to obtain homeowner’s insurance coverage for the house situated on the property. To that end, Farr testified that he contacted Orange Beach and requested “full coverage” to insure against a “total loss” of the house on the property and that he had trusted Orange Beach to secure the appropriate coverage limits. On March 29, 2004, Farr signed and submitted an application for homeowner’s insurance coverage with Lexington to Orange Beach, which is a “sub-agent or retail agent,” requesting $300,000 worth of insurance coverage against wind damage for the dwelling on the property and $20,000 worth of contents-insurance coverage. The $300,000 policy limit was based on the Holyfield appraisal.
 
 [2]
 
 Orange Beach forwarded Farr’s application for insurance coverage to Gulf Agency, a surplus lines broker. Gulf Agency did the underwriting on Farr’s application to Lexington in accordance with guidelines given it by Lexington and issued an insurance policy to Farr on behalf of Lexington (“the policy”). The effective dates of the policy were March 25, 2004, to March 24, 2005. On March 25, 2004, Lexington mailed the policy to
 
 *396
 
 Orange Beach for delivery to Farr. The policy specifically excluded primary flood insurance. Thus, in addition to the policy, Farr also secured a flood-insurance policy through the National Flood Insurance Program (“NFIP”) from Assurant Solutions in the coverage amount of $250,000 for the house and $20,000 for personal property. The policy also included the following provision:
 

 “Other Insurance. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.”
 

 On May 18, 2004, Farr signed a sales agreement to sell the property to a third party for $1,500,000 with a $100,000 down payment.
 

 In the late summer or early fall of 2004, Farr was concerned that the policy limits were not sufficient to adequately cover a total loss of the house. As a result, he consulted his attorney at the time, Chris Sanspree, and John Allen, an insurance-claims consultant listed by Farr as an expert witness. Sanspree and Allen were both of the opinion that Farr’s insurance coverage was inadequate. On March 1, 2004, Farr had executed a general power of attorney in favor of Sanspree for the purpose of dealing with matters regarding any insurance policies Farr had in place concerning the property. Farr indicated in his deposition testimony that he personally made no attempts to increase the policy limits on the property. Sanspree and Allen, however, indicated in their affidavit testimony or deposition testimony that they had contacted Orange Beach and Gulf Agency on behalf of Farr and had requested an increase in coverage under the policy.
 
 [3]
 
 The policy limits were never increased.
 

 On September 16, 2004, the house on the property was destroyed by Hurricane Ivan. On September 20, 2004, Farr contacted Orange Beach and filed a claim for insurance benefits under the policy. Orange Beach forwarded Farr’s claim to Lexington on September 21, 2004. Farr included a claim for benefits under the contents portion of the policy in the amount of $53,421.61.
 

 On November 12, 2004, Farr signed an amended sales agreement with the third party; the sales price was decreased from $1,500,000 to $1,180,000, in addition to the $100,000 down payment. The amended sales agreement acknowledged that the house had been declared a “full loss” and that it could not be “restored, repaired, or rebuilt in the present location of the improvement.” On February 7, 2005, Farr deeded the property to the third party and was paid $1,280,000.
 

 Alvin Wells was the flood adjuster for the NFIP assigned to Farr’s claim under the flood-insurance policy. According to his claim summary, Wells determined that the replacement value of the house was $454,272 and that 60% of the damage to the house, or the amount of $272,536.20, was attributable to flood damage. Accordingly, Wells determined that Farr was due the full policy limit of the flood-insurance policy, or $250,000. Wells also determined that Farr had suffered $29,548.95 worth of damage to the contents of the house. On April 22, 2005, Assurant Solutions paid Farr $250,000 under his flood-insurance policy for the damage to the house and $20,000 for the damage to the contents.
 

 
 *397
 
 At Farr’s request, Lexington retained Halliwell Engineering Associates, Inc. (“Halliwell”), to inspect the property and to determine the cause of the loss. Halli-well determined that the “proximate cause” of the destruction of the house “was the high ... storm surge and wave action associated with Hurricane Ivan.” Halli-well also determined that the roof of the house had been damaged by winds associated with Hurricane Ivan. As a result, on January 19, 2006, Lexington paid Farr $50,000 for the damage to the house.
 
 [4]
 
 Nothing in the record indicates that Lexington paid Farr anything under the contents portion of the policy.
 

 Alleging that the policy did not provide adequate coverage and that Lexington had failed to pay the proper benefits under the policy, Farr sued the insurance companies on November 2, 2007, asserting claims of fraud, misrepresentation, negligence, and conspiracy to defraud. Farr later amended the complaint to include claims of breach of contract and bad-faith failure to pay an insurance claim against Lexington.
 
 [5]
 
 The insurance companies answered and asserted various counterclaims against Farr.
 

 The insurance companies each filed a motion for a summary judgment, and the circuit court set the motions for a hearing on August 24, 2009.
 
 [6]
 
 On August 21, 2009, Farr filed an opposition to the insurance companies’ summary-judgment motions. Attached to Farr’s response was an affidavit of his former attorney, Chris Sanspree. The insurance companies moved to strike Sanspree’s affidavit from Farr’s response for various reasons, and the circuit court granted the motion. On September 1, 2009, the circuit court entered a judgment granting the insurance companies’ motions for a summary judgment. Farr filed a motion to alter, amend, or vacate the circuit court’s judgment pursuant to Rule 59(e), Ala. R. Civ. P., which the circuit court denied. Farr then appealed to this Court.
 

 The insurance companies’ counterclaims against Farr had not been adjudicated at the time Farr appealed the circuit court’s partial summary judgment; likewise, Farr’s claims against State Farm Insurance Company (“State Farm”) had not been adjudicated
 
 (see
 
 supra note 5). As a result, this Court entered an order remanding the case to the circuit court noting that the appeal was not from a final judgment because the counterclaims of the insurance companies and Farr’s claims against State Farm had not been adjudicated. On March 10, 2010, the circuit court entered an order making its September 1, 2009, judgment final pursuant to Rule 54(b), Ala. R. Civ. P., stating that “[tjhere is no just reason for delay and judgment is entered on behalf of the [insurance companies] as to [Farr’s] claims. The counterclaims of the [insurance companies] remain pending.” The claims against State Farm also remain pending. This Court then reinstated the appeal.
 

 Standard of Review
 

 We review a summary judgment by the following standard:
 

 
 *398
 
 “ ‘ “In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact” and whether the movant was entitled to a judgment as a matter of law.
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).’
 

 “Ex parte General Motors Corp.,
 
 769 So.2d 903, 906 (Ala.1999). When the basis of a summary-judgment motion is a failure of the nonmovant’s evidence, the movant’s burden, however, is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party’s case suffers an evidentiary failure.
 
 See General Motors,
 
 769 So.2d at 909 (adopting Justice Houston’s special concurrence in
 
 Berner v. Caldwell,
 
 543 So.2d 686, 691 (Ala.1989), in which he discussed the burden shift attendant to summary-judgment motions); and
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that ‘a party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion’). The moving party must support its motion with sufficient evidence only if that party has the burden of proof at trial.
 
 General Motors,
 
 769 So.2d at 909.”
 

 Rector v. Better Houses, Inc.,
 
 820 So.2d 75, 79-80 (Ala.2001). Additionally, we “accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party.”
 
 Bruce v. Cole,
 
 854 So.2d 47, 54 (Ala.2003).
 

 Discussion
 

 The circuit court entered a general order granting each insurance company’s summary-judgment motion. In each of the summary-judgment motions, the insurance companies argued that Farr’s tort claims were barred by the two-year statute of limitations for tort claims in § 6-2-38, Ala.Code 1975. The insurance companies maintain this argument on appeal, arguing that Farr knew of the causes of action underlying the alleged torts on March 29, 2004, the date he signed his application to Lexington for $300,000 worth of insurance coverage. The insurance companies argue that the tort allegations in Farr’s complaint filed on November 7, 2007, approximately three and one-half years after he had notice of the policy limits, are barred by the two-year statute of limitations. We agree.
 

 Each of Farr’s tort claims is governed by the two-year statute of limitations set forth in §
 
 6-2-38(l). See Boyce v. Cassese,
 
 941 So.2d 932, 943-44 (Ala.2006) (applying the two-year statute of limitations set forth in § 6-2-38 to bar claims of fraud and conspiracy to defraud);
 
 Auto-Owners Ins. Co. v. Abston,
 
 822 So.2d 1187, 1194 (Ala.2001) (noting that “any fraud claim must be brought within two years of the accrual of the claim. Ala.Code 1975, § 6-2 — 38(Z)”); and
 
 Booker v. United American Ins. Co.,
 
 700 So.2d 1333, 1339 (Ala.1997) (applying the two-year statute of limita
 
 *399
 
 tions set forth in § 6-2-38 to bar claims of negligence and wantonness). The statute of limitations began to run on Farr’s alleged tort claims when Farr signed the application to Lexington for insurance coverage on March 29, 2004, and was effectively put on notice of the coverage.
 
 [7]
 

 See Liberty Nat’l Life Ins. Co. v. Ingram,
 
 887 So.2d 222, 227 (Ala.2004) (holding that the statute of limitations in § 6-2-38 had begun to run on the insured’s tort claims when he received his insurance policy, effectively putting him on notice of his claims). Therefore, the tort claims asserted in Farr’s complaint, filed more than three years after March 29, 2004, were barred by the two-year statute of limitations.
 

 In his brief on appeal, Farr argues that the statute of limitations was tolled by various events, namely Lexington’s paying Farr $50,000 on January 19, 2006, and facts surrounding additional negotiations between the parties at that time. However, Farr provides no legal authority to support his claim. In
 
 University of South Alabama v. Progressive Insurance Co.,
 
 904 So.2d 1242, 1247-48 (Ala.2004) this Court held:
 

 “Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s ... brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ The effect of a failure to comply with Rule 28(a)(10) is well established:
 

 “ ‘It is settled that a failure to comply with the requirements of Rule 28(a) ([10]) requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
 

 “ ‘ “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research. Rule 28(a) ([10]);
 
 Spradlin v. Birmingham Airport Authority,
 
 613 So.2d 347 (Ala.1993).”
 

 “
 
 ‘City of Birmingham v. Business Realty Inv. Co.,
 
 722 So.2d 747, 752 (Ala.1998).
 
 See also McLemore v. Fleming,
 
 604 So.2d 353 (Ala.1992);
 
 Stover v. Alabama Farm Bureau Ins. Co.,
 
 467 So.2d 251 (Ala.1985); and
 
 Ex parte Riley,
 
 464 So.2d 92 (Ala.1985).’
 

 “Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001). ‘[W]e cannot create legal arguments for a party based on undeli-neated general propositions unsupported by authority or argument.’
 
 Spradlin v. Spradlin,
 
 601 So.2d 76, 79 (Ala.1992).”
 

 Therefore, we will not consider Farr’s tolling argument on appeal.
 

 Next, Farr alleges that the entry of a summary judgment by the circuit court on his breach-of-contract and bad-faith claims was in error. Farr argues that the policy was a “replacement value policy” and that, based on the value of the house at the time it was destroyed by Hurricane Ivan and despite the policy limit of $300,000, Lexington was obligated to pay the full amount it would cost to replace the house. Farr’s breach-of-contract argument is premised on his assertion that the policy limits were increased by an oral contract entered into by Sanspree, on behalf of Farr, and Orange Beach and/or Gulf Agency, on behalf of Lexington.
 
 *400
 
 Farr argues that, based on the increased policy limits, Lexington breached the policy by paying him only $50,000, rather than the cost of replacing the house. Farr alleges that the house was worth at least $568,000 — the cost of the renovations Farr had completed on the house — and that Lexington breached the policy by failing to pay to have the house replaced.
 

 The only evidence to support Farr’s assertion that the policy limits were increased by an oral contract between San-spree, representing Farr, and Orange Beach and/or Gulf Agency, representing Lexington, is the affidavit of Sanspree. Sanspree’s affidavit states, in pertinent part:
 

 “Later in the summer of 2004, after Dr. Farr received his policies for his home (flood and wind), Dr. Farr expressed concern that his beach residence was underinsured based upon the remodeling and upgrades in materials on the beach property and asked if I would contact Orange Beach ... and The Gulf Agency to ensure that he had adequate coverages covering his property. I agreed to do so and Dr. Farr subsequently provided me with detailed copies of receipts and cancelled checks directly related to the remodeling and upgrades to the beach home located in Orange Beach, Alabama, for the period of 1998 through 2004. In the middle to latter part of August of 2004, I presented copies of those receipts and canceled checks to Kevin McCarron and Jo-Jo McCarron in Orange Beach and also presented copies of the same to Terri Mantay at The Gulf Agency in Montgomery.
 

 “At each of the above meetings, I specifically requested an increase of $250,000.00 in homeowner’s insurance coverage to cover any damages caused by wind on Dr. Farr’s beach home and an increase in flood coverage of $250,000.00 to cover any damage caused by flood and water to Dr. Farr’s beach home. During the meeting with Terri Mantay, Ms. Mantay and I reviewed Dr. Farr’s initial policies, the policies’ coverage limits, discussed the location of the property, the fact that the property was not used as a rental property and discussed how much the additional premiums would be to increase Dr. Farr’s coverages as set forth above. I reviewed the receipts and canceled checks with Ms. Mantay and Ms. Mantay told me that The Gulf Agency had the authority to bind the coverage for the additional limits without having to involve Lexington or having to fill out an additional application because it was within The Gulf Agency’s underwriting limits. Ms. Mantay told me that she would increase the coverages immediately on the wind and flood insurance coverages and told me that the increase in coverage was bound and would take effect as of that day. I paid the additional premium on behalf of Dr. Farr for the increased premium costs associated with the increased limits and I departed the offices of The Gulf Agency.”
 

 As noted above, the insurance companies filed motions to strike Sanspree’s affidavit. The circuit court granted their motions, setting forth its reasoning at the hearing on the summary-judgment motions:
 

 “THE COURT: This is what I can’t understand. If you read the complaint, it talks in terms of representations made in March of 2004. And Mr. Sanspree’s affidavit, all he wants to talk about is something that happened in August of 200[4], You never amended the complaint to discuss anything about a representation that occurred in August of 200[4],
 

 
 *401
 
 “[Farr’s trial counsel]: Well, Judge, number one, that’s not a verified complaint
 

 “THE COURT: Well, it’s the one we’re going to trial on Monday.
 

 “[Farr’s trial counsel]: Well, on the amended complaint. When that first complaint was drawn up, I don’t know who signed the complaint. Okay.
 

 “THE COURT: Well, it is what it is.
 

 “[Farr’s trial counsel]: But I don’t think that, in regard to whatever the evidence whatever the evidence is subsequently produced, I think that [Lexington] has filed some counterclaims. And I think most everybody did on the basis that we’re going to amend our complaint to conform to the evidence.
 

 “THE COURT: Not with me, you’re not — Let me tell you what I’m going to do. I’m going to grant summary judgment. I’m going to strike the affidavit. That’s not an affidavit. It’s an amendment to the complaint. You’re adding a totally different lawsuit by bringing in a bunch of allegations made in 200[4], not a one of which your witness, [Farr], testified to in his deposition. He doesn’t say anything about a new contract in August of '0[4].”
 

 The circuit court granted the insurance companies’ motions to strike Sanspree’s affidavit on the basis that it was, in actuality, an attempt to amend the complaint.
 

 In his brief before this Court, Farr argues that the circuit court erred in striking Sanspree’s affidavit, but he fails to address the circuit court’s reasoning for doing so. Instead, Farr addresses the reasoning set forth in the insurance companies’ motions to strike Sanspree’s affidavits. Farr has failed to provide this Court with any legal argument as to why he believes that the circuit court erred in striking Sanspree’s affidavit as an attempt to amend the complaint. Therefore, we affirm the circuit court’s ruling granting the insurance companies’ motions to strike Sanspree’s affidavit.
 
 See
 
 Rule 28(a)(10), Ala. R.App. P.; and
 
 University of South Alabama,
 
 supra. As a result, there is no basis for Farr’s second breach-of-contract argument.
 
 [8]
 

 Moreover, the circuit court did not exceed its discretion in striking San-spree’s affidavit as an impermissible attempt by Farr to amend his complaint. As the circuit court noted in denying this attempt to amend his complaint, Farr’s attempt came 12 days before the case was to go to trial. Rule 15(a), Ala. R. Civ. P., governs amendments to pleadings. It provides, in pertinent part:
 

 “Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires.
 
 Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.”
 

 (Emphasis added.) In
 
 Boros v. Baxley,
 
 621 So.2d 240 (Ala.1993), we explained:
 

 “Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that ‘the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is
 
 *402
 
 subject to reversal on appeal only for an abuse of discretion.’ ”
 

 621 So.2d at 245 (citations omitted). Thus, “Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time.”
 
 Stallings v. Angelica Uniform Co.,
 
 388 So.2d 942, 947 (Ala.1980). “[U]n-due delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment.”
 
 Puckett, Taul & Underwood, Inc. v. Schreiber Corp.,
 
 551 So.2d 979, 984 (Ala.1989). “[I]f the court determines ... that a party has had sufficient opportunity to state a claim ... but has failed to do so, leave to amend may properly be denied.”
 
 Walker v. Traughber,
 
 351 So.2d 917, 922 (Ala.Civ.App.1977).
 

 Farr’s breach-of-contract claim must fail because there is no evidence to support his assertion that the policy limits were ever increased.
 
 [9]
 
 In fact, Farr makes an alternative argument in his brief before this Court to attempt to address such a determination: “Assuming arguendo, that Farr’s policy limits were not increased, then the [insurance companies] failed in their duty to procure adequate insurance on Farr’s behalf thereby causing Farr damages.” Farr’s brief, at p. 51. It is undisputed that the appraisal was the only information provided the insurance companies concerning the value of the house and that the policy limits were set accordingly. Farr agreed to the policy limits by signing the application. Any duty incumbent upon the insurance companies in establishing the policy limits were satisfied and were agreed to by Farr. Thus, we construe the quote from Farr’s brief not as an allegation that Lexington breached the policy as it was originally agreed to, but only as that policy was allegedly amended. However, as discussed above, there is no evidence to support Farr’s claim that the policy was amended. Therefore, the circuit court’s judgment granting the insurance companies’ summary-judgment motions is affirmed as to Farr’s allegation that Lexington had breached the policy by not paying Farr benefits under the wind-damage portion of the policy. Further, concerning Farr’s argument that the insurance companies had “failed in their duty to procure adequate insurance on Farr’s behalf,” as discussed above, Farr’s tort claims are barred by the two-year statute of limitations.
 

 Farr also argues, in relation to his breach-of-contract claim, that Lexington is “not entitled to claim as a set off to the damages [it] caused, amounts paid by a collateral source completely unrelated to [its] wrongdoing.” Farr’s brief, at p. 42. However, Farr raises this argument for the first time on appeal; thus, we will not consider it.
 
 See Totten v. Lighting & Supply, Inc.,
 
 507 So.2d 502, 503 (Ala.1987).
 

 Alternatively, however, Farr alleges that Lexington breached the policy by failing to pay him the $20,000 worth of contents coverage he had under the policy. Attached to his motion opposing the insurance companies’ summary-judgment motions, Farr included evidence indicating that he had suffered at least $29,548.95 worth of damage to the contents of the house. Farr argues on appeal that Lexington breached the policy by failing to pay Farr under the contents portion of the policy. Lexington fails to address this claim in its brief.
 

 
 *403
 
 Lexington paid Farr $50,000 under the policy as its portion of the damage sustained to the house. Lexington did not pay Farr any amount under the contents portion of the policy. Farr produced substantial evidence that he had suffered at least $29,548.95 worth of damage to the contents in the house. Therefore, even though Assurant Solutions paid Farr the flood-insurance policy limit of $20,000 for the damage to his contents, the undisputed evidence indicates that Farr suffered at least $29,548.95 worth of damage to his contents and that Lexington did not pay Farr under the contents portion of the policy. Therefore, we reverse the circuit court’s judgment insofar as it held that Lexington had not breached the policy by failing to pay Farr any proceeds under the contents provision of the policy.
 

 Next, Farr also argues on appeal that the circuit court’s judgment granting Lexington’s summary-judgment motion on Farr’s bad-faith claim was in error. This Court set forth the elements of a bad-faith-refusal-to-pay claim in
 
 National Security Fire & Casualty Co. v. Bowen,
 
 417 So.2d 179 (Ala.1982):
 

 “[T]he plaintiff in a ‘bad faith refusal’ case has the burden of proving:
 

 “(a) an insurance contract between the parties and a breach thereof by the defendant;
 

 “(b) an intentional refusal to pay the insured’s claim;
 

 “(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 

 “(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
 

 “(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 

 “In short, plaintiff must go beyond a mere showing of nonpayment and prove a
 
 bad faith
 
 nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.”
 

 417 So.2d at 183.
 
 See also Chavers v. National Sec. Fire & Cas. Co.,
 
 405 So.2d 1 (Ala.1981).
 

 Based on our conclusion that Lexington did not breach the policy by paying Farr $50,000 for the damage to the house, Farr cannot maintain his bad-faith claim based on that particular breach-of-contract claim. Farr could, however, maintain his bad-faith claim against the insurance companies concerning Lexington’s failure to pay the contents portion of the policy. However, Farr has failed to direct this Court to any evidence indicating that Lexington operated in bad faith in its failure to pay Farr under the contents portion of the policy. In fact, Farr fails to present any argument on appeal concerning his bad-faith claim based on Lexington’s breach of the contents portion of the policy; thus, we will not consider it on appeal.
 
 See
 
 Rule 28(a)(10), Ala. RApp. P.; and
 
 University of South Alabama,
 
 supra. Therefore, the circuit court’s judgment granting Lexington’s summary-judgment motion concerning Farr’s bad-faith claim is affirmed.
 

 Conclusion
 

 Based on the foregoing, we affirm the circuit court’s judgment insofar as it entered a summary judgment for the insurance companies on Farr’s tort claims, his breach-of-contract claim against Lexington as that claim relates to Lexington’s payment under the policy for the wind damage to the house, and his bad-faith claim. We
 
 *404
 
 reverse the circuit court’s judgment in favor of Lexington on Farr’s breach-of-contract claim as to Lexington’s failure to pay the contents portion of the policy, and we remand the cause for proceedings consistent with this opinion.
 
 [10]
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 STUART, SHAW, and WISE, JJ., concur.
 

 BOLIN, J., concurs in the result.
 

 COBB, C.J., recuses herself.
 

 [1]
 

 . At some point during the litigation, Orange Beach became McCarron Insurance Group, Inc. However, in the interest of clarity, we will continue to refer to this entity as "Orange Beach.”
 

 [2]
 

 . Apparently Orange Beach had ordered its own appraisal of the property when Farr requested insurance coverage. However, a mistake was made regarding that appraisal, and the parties relied on the Holyfield appraisal in setting the policy limits.
 

 [3]
 

 . The insurance companies filed a motion to strike Sanspree’s affidavit, which the trial court granted.
 

 [4]
 

 . The $50,000 payment from Lexington to Farr was initially characterized as an "advance.” However, following Lexington's investigation into Farr’s claim, Lexington determined that there was no basis for any further payments.
 

 [5]
 

 . Farr also filed a second amended complaint adding State Farm Insurance Company as a party and alleging a claim of breach of contract against it. That claim is not the subject of this appeal and remains pending in the circuit court.
 

 [6]
 

 .The hearing on the insurance companies’ summary-judgment motions actually occurred on August 26, 2009.
 

 [7]
 

 . We note that the policy was actually issued and delivered to Farr on March 25, 2004, four days before the date Farr signed the application for the policy. There appears to be no evidence explaining why the policy was issued before the application was signed. However, the parties are in agreement as to these dates.
 

 [8]
 

 . We note that Farr does address the circuit court’s reasoning for striking Sanspree’s affidavit in his reply brief. However, “[w]here an appellant first cites authority for an argument in his reply brief, it is as if the argument was first raised in that reply brief, and it will not be considered.”
 
 Steele
 
 v.
 
 Rosenfeld, LLC,
 
 936 So.2d 488, 493 (Ala.2005).
 

 [9]
 

 . Farr alleges that the deposition testimony of Allen also supports Farr’s assertion that an oral contract increasing the policy limits existed. However, nothing in Allen’s deposition testimony indicates that an oral contract was made, that the policy limits would be increased, or that Sanspree had actually paid additional premiums on Farr’s behalf.
 

 [10]
 

 . Farr included two other arguments we do not address on appeal: 1) that “the house was not under construction or unoccupied when the insurance application was signed” and 2) that "there is no absolute rule that regardless of the factual circumstances, a surplus lines broker can never have an agency relationship with an insured.” Farr's brief, at pp. 39-42 and 58-59, respectively. However, based on our decision on other issues, we pretermit discussion of those arguments.